Richard O'BRIEN, et al., Plaintiffs,

v.

BOARD OF EDUCATION OF THE DEER PARK UNION FREE SCHOOL DISTRICT DEER PARK PUBLIC SCHOOLS, Defendant.

Equal Employment Opportunity Commission, Plaintiff,

v.

Deer Park Union Free School District and Deer Park Teachers Association, Defendants.

No. 94 CV 04695 (DRH).

United States District Court, E.D. New York.

March 29, 2000.

Rosen, Leff, Hempstead, NY by Robert M. Rosen, Douglas D. Scherer, Lori Brown, for Plaintiffs Richard O'Brien, et al.

Equal Employment Opportunity Commission, New York District Office, New York City by Elizabeth Grossman, David L. Barkey, for Plaintiff, E.E.O.C.

Barry McTiernan & Moore, New York City by Suzanne M. Halbardier, for Defendant, Deer Park Union Free School Dist.

## MEMORANDUM AND ORDER

HURLEY, District Judge.

Pending before the Court are: (1) the motion by plaintiffs Richard O'Brien, Nettie Bailey, George Diehr, Rita Lipnick, Robert Luther, Patricia Principe, Dolores Raymond, and Dolores Ullman (the "O'Brien Plaintiffs") for summary judgment in case number 94 CV 4695; (2) the motion by plaintiff Equal Employment Opportunity Commission (the "EEOC") (collectively with the O'Brien Plaintiffs, "Plaintiffs") for summary judgment in case number 95 CV 0092; (3) the cross-motion by defendant Deer Park Union Free School District ("Defendant") for leave to amend its answer in case number 95 CV 0092; and (4) the cross-motion by Defendant for summary judgment in case numbers 94 CV 4695 and 95 CV 0092. For the reasons stated below, Plaintiffs' motions for summary judgment are granted[1] and Defendant's cross-motions for leave to amend its answer and for summary judgment are denied.

## BACKGROUND

The undisputed facts are as follows: On May 29, 1996, the above-referenced cases were consolidated for discovery purposes and discovery was completed in April 1999. The O'Brien Plaintiffs were employed as teachers by Defendant and all retired sometime in 1992 to 1994. Their contractual retirement rights were governed by a collective bargaining agreement effective July 1, 1991 to June 30, 1994 (the "CBA").

Article VII, Section 10(g) of the CBA ("Section 10(g)") is entitled "Sick Leave Accumulation for Purpose of Retirement Payment." Section 10(g) provides, in pertinent part, as follows:

> Effective July 1, 1988, teachers who retire in their first school year of eligibility shall be compensated for 100% of their accumulated sick leave as provided above.

> Teachers who retire in their second school year of eligibility shall be compensated for 80% of their accumulated sick leave as provided above.

> Teachers who retire in their third school year of eligibility shall be compensated for 75% of their accumulated sick leave as provided above.

> Teachers who retire in their fourth school year of eligibility shall be compensated for 70% of their accumulated sick leave as provided above.

> Eligibility shall be defined as having attained at least 55 years of age with at least 10 years of retirement credit in the New York State Teachers Association Retirement System. All teachers who have become eligible for retirement prior to July 1, 1988 shall be considered in their first year of eligibility as of the 1988–89 school year.

(Affidavit of Richard O'Brien, sworn to May 27, 1999, Ex. G § 10(g).)

Plaintiffs claim that Section 10(g) violates the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. § 621 *et seq.*, as amended by the Older Workers' Benefit Protection Act of 1990, Pub.L. No. 101–433, 104 Stat. 978, codified at 29 U.S.C. §§ 621, 623, (the "OWBPA"), and Section 296 of the New York State Executive Law, because it reduces the amount of accumulated sick leave compensation paid to teachers formerly employed by Defendant on the basis of their age. They now move for summary judgment on their ADEA claim on the issue of liability only.

---

1. Although the O'Brien Plaintiffs and the EEOC have submitted separate motions, their arguments are essentially the same. Therefore, their motions will be addressed together.

Defendant cross-moves for leave to amend its answer in the EEOC case to assert the affirmative defense found in 29 U.S.C. § 623(f)(2)(B)(ii). Defendant also cross-moves in both actions for summary judgment.

Because the Court finds that Section 10(g) is facially discriminatory and Defendant has failed to establish the affirmative defense of 29 U.S.C. § 623(f)(2)(B)(ii), which the Court holds applies to this action, Plaintiffs' motions for summary judgment are granted. Defendant's cross-motion to amend its answer in the EEOC case is denied as futile as Defendant cannot meet the elements of the defense. Finally, Defendant's cross-motion for summary judgment is' denied as the Court holds that Section 10(g) does in fact violate the ADEA.

## DISCUSSION

The ADEA prohibits discrimination in the "compensation, terms, conditions, or privileges of employment" by employers against individuals over the age of forty. 29 U.S.C. §§ 623(a)(1) and 631(a). The ADEA was amended by the OWBPA in 1990 to "revive[ ] the ADEA's original purpose to eliminate arbitrary age discrimination in all facets of the workplace, including employee benefits." *Auerbach v. Board of Educ. Of the Harborfields Cent. School Dist.*, 136 F.3d 104, 112 (2d Cir. 1998). Thus, employee benefit plans are subject to the ADEA.

The OWBPA "subdivides employee benefit plans into two categories: employee benefits and early retirement incentive plans," *id.*, and provides affirmative defenses which permit an employer to escape liability for disparate treatment in either category on the basis of age. The affirmative defenses are set forth in 29 U.S.C. § 623(f)(2)(B) ("Section 623(f)(2)(B)") which provides:

It shall not be unlawful for an employer, employment agency, or labor organization—

. . . .

(B) to observe the terms of a bona fide employee benefit plan—

(i) where, for each benefit or benefit package, the actual amount of payment made or cost incurred on behalf of an older worker is no less than that made or incurred on behalf of a younger worker,

. . . .

(ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter.

29 U.S.C. § 623(f)(2)(B).

Section 623(f)(2)(B)(i) "governs employee benefits and expressly adopts the 'equal benefit or equal cost' principle, [i.e.,] that [t]he only justification for an age-based reduction in employee benefits is the increased cost in providing those benefits to older workers." *Auerbach*, 136 F.3d at 112. Thus, Congress recognized that because "the costs of providing certain employee benefits increases with age, ... employers need not provide 'exactly the same benefits' to older employees as they do for younger ones, when to do so would result in excessive benefit costs that would discourage employers from hiring older workers in the first place." *Id.* at 110.

Section 623(f)(2)(B)(ii) "controls early retirement incentive plans and, significantly, contains no such increased cost language. In other words, the 'equal benefit or equal cost' rule has no application in the retirement incentive plan context.... Rather, the early retirement incentive plan need only be voluntary and consistent with ... the protection of employees from arbitrary age discrimination." *Id.*

In the instant case, Defendant asserts that the payment of accumulated sick leave compensation under Section 10(g) is a retirement incentive and, therefore, raises the affirmative defense found in Section 623(f)(2)(B)(ii). Plaintiffs, however, claim that this payment is an employee benefit and, thus, the affirmative defense of Section 623(f)(2)(B)(i) is applicable, which,

they contend, Defendant cannot establish. Alternatively, Plaintiffs claim that if the Court finds that the payment provided for in Section 10(g) is a retirement incentive, Defendant cannot satisfy the requirements of Section 623(f)(2)(B)(ii).

*The Accumulated Sick Leave Benefit Provided for in Section 10(g) is a Retirement Incentive*

Pursuant to Section 10(g), during the first year of eligibility, teachers receive payment for 100% of their accumulated sick leave. During the second, third and fourth years of eligibility, the percentage of payment is reduced to 80%, 75% and 70%, respectively. After the fourth year of eligibility, the percentage of payment levels off to 70% for all teachers eligible for accumulated sick leave compensation.

The ADEA, as amended by the OWB-PA, does not specifically define the terms employee benefit or retirement incentive. In asserting that the payment of accumulated sick pay is an employee benefit, Plaintiffs present several arguments. Among those arguments, they claim that pursuant to Section 10(g), *all* eligible retiring teachers were entitled to 70% payment of their accumulated sick leave. They also argue that the CBA itself characterizes payment for accumulated sick leave as a benefit. (CBA § 10(e) ("Retirees shall have the option to receive the payment in a lump sum or remain on the payroll until the accumulated sick leave is exhausted with *all other benefits.*") (emphasis added).) Finally, they point to other language in the CBA which demonstrates that teachers earned sick leave based on the amount of time they actually worked. Defendant, on the other hand, contends that accumulated sick pay was always viewed as a retirement incentive to encourage retirement of higher paid workers.

In *Auerbach,* the Second Circuit evaluated whether a provision in a collective bargaining agreement providing for sick leave benefits was an employee benefit or a retirement incentive. The clause provided that a retiring teacher was eligible to receive payment for accumulated sick leave plus a $12,500 retirement incentive if he or she retired at the conclusion of the first school year in which the teacher was age 55 or older, had completed 20 years of credited service under the New York State Teachers Retirement System and 10 consecutive full years of service in the school district. 136 F.3d at 107. If the teacher did not retire in the first year of eligibility, he or she lost the right to the benefits. *Id.* at 108.

In concluding that the payment was a retirement incentive, the Second Circuit stated solely as follows:

> At the outset, we quickly dispose of plaintiffs' argument that the sick leave benefit is an "employee benefit" subject to the "equal benefit or equal cost" rule of [Section 623(f)(2)(B)(i) ]. Upon close examination of the plan, we have determined that the sick leave benefit is, in fact, a retirement incentive under the plan because the sick leave benefit *is not paid out unless and until a teacher retires under the plan.* For that reason, we will apply [Section 623(f)(2)(B)(ii) ] to the entire plan at issue.

*Id.* at 112 (emphasis added).

Here, Plaintiffs argue that Section 10(g) is distinct from the provision in *Auerbach* because Section 10(g) does not provide an additional lump sum of money as a retirement incentive and because the teachers' right to payment for accumulated sick leave did not expire if the teacher did not retire in the first year of eligibility. They also argue that Section 10(g) cannot be classified as a retirement incentive because it utilizes a penalty to induce early retirement as opposed to an incentive, as only those teachers who retire immediately upon reaching eligibility can receive the highest benefits.

■ Notwithstanding Plaintiffs' arguments, the Court finds that it is constrained to conclude that the benefits provided for in Section 10(g) are a retirement incentive by virtue of the Second Circuit's holding in *Auerbach.* In that case, the

Second Circuit found the payment at issue to be a retirement incentive where, as here, "the sick leave benefit [was] not paid out unless and until a teacher retires." *Id.* Contrary to Plaintiffs' arguments, the Second Circuit did not distinguish between the lump sum payment and the payment for accumulated sick leave. Rather, the court analyzed the benefit as a whole. Moreover, the distinction Plaintiffs draw from the fact that, in *Auerbach,* a teacher lost the right to the benefits if he or she did not retire in the first year of eligibility, and here, a retiring teacher received a minimum of 70% of sick leave regardless of when the teacher retired is unavailing, as this distinction has no bearing on the fact that under both clauses, payment is only triggered upon retirement. Accordingly, the Court holds that under the rationale of *Auerbach,* Section 10(g) provides for a retirement incentive. Thus, only the affirmative defense found in Section 623(f)(2)(B)(ii) is applicable and is analyzed below.[2]

*Defendant's Cross–Motion for Leave to Amend its Answer in the EEOC Case to Assert the Affirmative Defense of Section 623(f)(2)(B)(ii) is Denied as Futile*

Although Defendant asserted the affirmative defense of Section 623(f)(2)(B)(ii) in its amended answer to the O'Brien Plaintiffs' complaint, it did not include such an affirmative defense in its answer to the EEOC complaint, which was filed on August 9, 1995. In October 1997, Defendant requested that the EEOC stipulate to its filing of an amended answer so that it could assert this affirmative defense, but the EEOC declined to consent. (Affidavit of David L. Barkey, sworn to May 27, 1999, Ex. 8.) Thereafter, Defendant did not move for leave to amend but did assert the affirmative defense in the parties' Joint Pre–Trial Order. Finally, in July 1999, Defendant cross-moved for leave to amend.

Defendants claims that it did not assert the Section 623(f)(2)(B)(ii) defense in its answer to the EEOC complaint "through oversight" and emphasizes that it did assert the defense in its answer to the O'Brien Plaintiffs' complaint. (Def.'s Mem. at 13.) Defendant further alleges that it did not formally move for leave to amend sooner because "of the significant alternative dispute resolution conducted in this case" and because the EEOC was on notice, all along, that the defense applied in its action as well. (*Id.* at 13–14.)

Federal Rule of Civil Procedure 15(a) provides that leave to amend "shall be freely given." Fed.R.Civ.P. 15(a). "Nonetheless, a motion to amend should be denied if there is an 'apparent or declared reason—such as undue delay, bad faith or dilatory motive . . ., repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, [or] futility of amendment.' " *Dluhos v. Floating and Abandoned Vessel, known as New York,* 162 F.3d 63, 69 (2d Cir.1998) (quoting *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)).

Furthermore, "[t]he general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." *Travellers Int'l, A.G. v. Trans World Airlines, Inc.,* 41 F.3d 1570, 1580 (2d Cir.1994) (citing *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 n. 2 (2d Cir.1988)). The rule, however is "not applied automatically and as a practical matter there are numerous exceptions to it." *American Fed. Group, Ltd. v. Rothenberg,* 136 F.3d 897, 910 (2d Cir.1998) (citation omitted).

---

**2.** In light of the Court's holding, the Court need not, and does not, address whether Defendant has met the affirmative defense found in Section 623(f)(2)(B)(i), which only applies to an employee benefit. The Court notes, however, that even if the benefits provided for in Section 10(g) could be classified as employee benefits rather than a retirement incentive, it appears that, based upon the present record, Defendant would not be able to establish the Section 623(f)(2)(B)(i) defense as Defendant has failed to proffer any evidence that the age-based reduction in benefits was cost justified.

Here, although the excuses proffered by Defendant for its failure to assert the Section 623(f)(2)(B)(ii) defense and for its failure to move to amend sooner are not compelling, to say the least, the Court finds that given the totality of the circumstances, especially the absence of prejudice to the EEOC, leave to amend should not be denied on this ground. Discovery in these two cases was consolidated and discovery on this affirmative defense has been taken by all parties. The EEOC has been aware of the relevancy of this affirmative defense from the beginning. In that regard, allowance of the amendment will not delay the proceedings.

For the reasons set forth below, however, Defendant has failed to establish the elements necessary to set forth the Section 623(f)(2)(B)(ii) affirmative defense and, accordingly, leave to amend would be futile. Defendant's cross-motion for leave to amend its answer in the EEOC case is therefore denied.

*Section 10(g) Violates the ADEA*

A. *Plaintiffs Have Set Forth a Prima Facie Case of Age Discrimination*

To establish a claim for disparate treatment under the ADEA, Plaintiffs must first demonstrate a prima facie case of age discrimination. *Auerbach*, 136 F.3d at 109. Thus, "[P]laintiffs bear the initial burden of demonstrating that the actual motivation for the employer's decision was the employee's age." *Id.* (citing *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993) ("[A] disparate treatment claim cannot succeed unless the employee's protected trait actually played a role in that process and had a determinative influence on the outcome.")). "No discrimination under the ADEA occurs when some factor other than age motivates the employer's action or decision." *Id.* A plaintiff's burden in establishing a prima facie case is "de minimis." *Id.* at 109–110.

Pursuant to Section 10(g), teachers who were at least 55 years of age with at least 10 years of retirement credit in the New York State Teachers Association Retirement System were eligible for payment of unused accumulated sick leave. During the first year of eligibility, teachers received payment for 100% of their accumulated sick leave. During the second, third and fourth years of eligibility, the percentage of payment was reduced to 80%, 75% and 70%, respectively. After the fourth year of eligibility, the percentage of payment leveled off to 70%.

Defendant argues that Plaintiffs cannot establish a prima facie case because the retirement incentive in Section 10(g) was based on years of service and not age. The Court does not agree. In *Auerbach*, the Second Circuit analyzed a clause which provided that a retiring teacher was eligible to receive payment for accumulated sick leave plus a $12,500 retirement incentive if he or she retired at the conclusion of the first school year in which the teacher was age 55 or older, had completed 20 years of credited service under the New York State Teachers Retirement System and 10 consecutive full years of service in the school district. 136 F.3d at 107. It the teacher did not retire in the first year of eligibility, he or she lost the right to the benefits. *Id.* at 108.

In finding that age, not years of service, was the factor behind the clause's disparate treatment of teachers, the Second Circuit reasoned:

Here the ... plaintiffs fulfilled the retirement plan's job service requirements and reached the requisite age of 55 or older. But because they did not retire in the precise year when they first fulfilled the requirements of the plan, they are forever precluded from receiving the retirement incentive benefits. Thus, age is a trigger for the denial of their employee benefits. Meanwhile, teachers under the age of 55 who have fulfilled the plan's job service requirements have the future option to receive the retirement incentive benefits.

*Id.* at 110.

The provision in *Auerbach* is distinguishable from the case at bar in that,

here, if the teacher did not retire in the first year of eligibility, he or she was not forever barred from receiving retirement benefits; rather, the amount of the benefits was simply reduced. Notwithstanding this distinction, however, the Second Circuit's decision in *Auerbach* is instructive. Here, as in *Auerbach,* age was a trigger, albeit not for the *denial* of employee benefits, but for the *reduction* of those benefits. As stated by the O'Brien Plaintiffs:

> As the teacher aged beyond 55 years and did not retire, the accumulated sick leave benefit was unlawfully decreased whether the teacher had ten, fifteen, twenty, or thirty years of retirement credit.... Coupling the age discrimination with a ten years retirement credit did not change the fact that age was the trigger for the reduction in accumulated sick leave benefits.

(O'Brien Pls.' Mem. of Law in Answer to Def.'s Cross–Motion for Summ.J., and in Reply to Def.'s Answer to Pls.' Mot. for Summ. J. at 3–4.)

This conclusion is further buttressed not only by *Auerbach* but by the Seventh Circuit's decision in *Karlen v. City Colleges of Chicago,* 837 F.2d 314 (7th Cir.1988).[3] The provision at issue was described by the court as follows:

> The Early Retirement Program is open to any faculty member between 55 and 69 years of age who has been continuously employed full-time for at least ten years.... A faculty member who is between the ages of 55 and 58 when he takes early retirement is entitled to receive, in addition to his pension, a lump sum equal to 50 percent of his accumulated sick pay, valued at his base salary rate in his final year of service. The percentage rises to 60 percent for 59–year–olds and 80 percent for 60– to 64–year–olds, *then plunges to 45 percent for 65– to 70–year–olds.* Retirement is mandatory at 70.... [In addition w]hile

faculty members who retire between the ages of 55 and 64 continue to be covered by the Colleges' group insurance policy ... until they reach the age of 70, those who retire at age 65 or later cease, upon retirement, to be covered

*Id.* at 316 (emphasis added). In finding the terms of this plan sufficient to establish a prima facie case of age discrimination, the Seventh Circuit reasoned:

> In the present case ... there is discrimination against the older worker. Everyone between 55 and 69 is eligible for early retirement, but those between 64 and 69—an older age group—are disfavored relative to the younger employees in the eligible group. If the City Colleges said to their faculty, at age 65 you lose your free parking space (or dental insurance, or any other fringe benefit), they would be guilty, prima facie, of age discrimination. Early-retirement benefits are another fringe benefit—and they plummet at age 65.

*Id.* at 318.

Similarly, in *Solon v. Gary Community School Corp.,* 180 F.3d 844 (7th Cir.1999), the plan at issue provided that "[t]eachers who retire on their 58th birthday receive the maximum forty-eight months of benefits available under this plan; teachers who retire later receive the same monthly payments but fewer of them, as the payments terminate at age 62." *Id.* at 846. In finding that plaintiffs had met their prima facie case of discrimination, the Seventh Circuit explained:

> In this case, there is an equally obvious difference in the benefits that retirees will receive under the [plan] depending upon their age. Those retiring at age 58 will receive four years of incentive payments, those retiring at age 60 only two years, and those retiring at age 62 or later, nothing. Those employees

---

**3.** The holding in *Karlen* is no longer applicable to the extent *Karlen* held that a genuine issue of material fact existed as to whether challenged provisions in a retirement program were a subterfuge for discrimination, a former defense under the ADEA, which has since been amended by the OWBPA. This has no bearing, however, on the Court's reliance on *Karlen* with regard to its discussion of the prima facie case.

who elect to retire at 62 or later are put at a disadvantage for not retiring when they were 58 to 61, no matter how "early" their later separation may be in terms of their length of service or previous retirement plans. And even for those within the 58 to 61 age group, we have exactly the situation that we did in *Karlen* — a full "carrot" for those aged 58, and an increasingly smaller piece of that carrot (25 percent less per year) for those closer to age 62. The amount of the benefits varies depending upon the retiree's age, nothing else. Just as in *Karlen,* the terms of the [plan] establish a prima facie case of age discrimination.

. . . .

In this respect, employees who retire at a younger age are treated more favorably than those who retire later, based not on years of service or some other nondiscriminatory factor, but solely on their age at retirement.

*Id.* at 852–53.

Pursuant to these cases, it is clear that Section 10(g) is discriminatory on its face. Accordingly, the Court holds that Plaintiffs have demonstrated a prima facie case of age discrimination.[4]

*Defendant Fails to Establish the Affirmative Defense of Section 623(f)(2)(B)(ii)*

"Under the [OWBPA], once the plaintiff has set forth a prima facie case of age discrimination, the defendant bears the burden of establishing that the early retirement incentive plan is voluntary and comports with the purposes of the ADEA [pursuant to Section 623(f)(2)(B)(ii)]." *Auerbach,* 136 F.3d at 112. "Whether such a plan 'furthers the purposes of the Act' is ultimately an inquiry to be made on a case-by-case basis, taking into account all of the relevant facts and circumstances."

*Id.* "A court examining the validity of these plans should consider whether the plan (1) is truly voluntary, (2) is made available for a reasonable period of time, and (3) does not arbitrarily discriminate on the basis of age." *Id.* at 112–13. The Court will examine these factors in turn.

A. *Voluntariness*

In determining whether a retirement plan is voluntary, "a court must consider whether, under the circumstances, a reasonable person would have concluded that there was no choice but to accept the offer." *Id.* at 113 (citing *Paolillo v. Dresser Indus., Inc.,* 821 F.2d 81, 84 (2d Cir. 1987) (giving employees only one weekend to accept early retirement raises question whether acceptance of plan is voluntary)). Plaintiffs argue that the plan is involuntary because it penalized teachers on the basis of age for continuing to work. They contend that "[f]aced with the prospect of retiring with 100% of accumulated sick leave compensation or continuing to work while losing up to 30% of this sick leave compensation, reasonable teachers had no choice but to retire." (EEOC's Mem. in Supp. of its Mot. for Summ.J. at 22.) They cite *Solon,* 180 F.3d 844, where in finding that plaintiffs had met their prima facie case of age discrimination, the Seventh Circuit found: "Nor does it matter that each of the plaintiffs could have retired within the framework of the [plan] and received the maximum available benefits. The point of the plaintiffs' case is not that they were never eligible for the incentives, but that the terms of the plans put them to an *unlawful choice.*" *Id.* at 853 (emphasis added).

---

**4.** The Court rejects Defendant's attempt to counter Plaintiffs' prima facie showing of discrimination by alleging that it adopted Section 10(g) for economic reasons as motive is irrelevant once the Court determines that the plan is facially discriminatory. (Def.'s Mem. at 7.) *See Solon,* 180 F.3d at 855 ("The terms of the [plans] themselves explicitly establish an employee's eligibility for the early retire-

ment incentives in terms of his age. The plans are therefore discriminatory on their face, ... and independent proof of an illicit motive is unnecessary.") (citations omitted); *Johnson v. State of New York,* 49 F.3d 75, 79 (2d Cir.1995) ("Where an employment practice is facially discriminatory, the plaintiff need not prove the employer's animus or ill will toward older people.").

Although Plaintiffs' argument has appeal, the Court declines to adopt it. Firstly, the Court notes that the discussion in *Solon* was not made in the context of a Section 623(f)(2)(B)(ii) defense, but rather in the context of analyzing whether the plaintiffs had met their prima facie case of establishing that the plan discriminated on the basis of age. Thus, its finding that the plan provision provided plaintiffs with an "unlawful choice" does not equate to a finding of involuntariness under Section 623(f)(2)(B)(ii).

Next, the Court finds language by the Second Circuit in *Auerbach* to be persuasive. In *Auerbach*, as discussed more fully above, the provision at issue provided that a retiring teacher was eligible to receive payment for accumulated sick leave plus a lump sum payment only if he or she retired at the conclusion of the first school year in which the teacher was age 55 or older and had completed a certain number of years of credited service. 136 F.3d at 107. *Id.* at 108. In finding that the provision was voluntary, the Second Circuit stated:

> The present early retirement plan provides older teachers with an uncoerced, free choice. No teacher is required to accept the plan. Moreover, the record shows that neither fraud, threats of imminent layoffs, intimidation nor subtle coercion are present. Instead, teachers receive complete and accurate information regarding the benefits available to them under the plan. Those who elect not to retire in the optimum year continue to teach and receive all of the benefits of the collective bargaining agreement, including annual salary increases. Hence, the plan meets Congress' test of voluntariness.

*Id.* at 113.

■ In *Auerbach*, if the teacher did not retire in the first year of eligibility, he or she lost the right to the benefits. Nonetheless, the Second Circuit found the clause voluntary because the teachers had a choice to forego the payment and were not required to accept the plan. Here, if a teacher did not retire in the first year of eligibility, he or she did not lose the right to payment; rather, the payment was simply reduced. Thus, the present facts are even more compelling for a finding of voluntariness under the rationale espoused in *Auerbach.* Moreover, as in *Auerbach,* there has been no showing of "fraud, threats of imminent layoffs, intimidation nor subtle coercion," or any other showing that the teachers were required to accept the plan. Accordingly, the Court finds that the retirement incentive offered in Section 10(g) is voluntary.

## B.   *Reasonable Period of Time*

Plaintiffs do not dispute that the teachers were given a reasonable amount of time to accept the retirement incentive. Accordingly, the Court assumes, for purposes of this motion, that this requirement has been met.

## C.   *Arbitrary Discrimination*

The final factor Defendant must establish in order to satisfy a Section 623(f)(2)(B)(ii) defense is that Section 10(g) does not arbitrarily discriminate on the basis of age. In *Auerbach,* the Second Circuit found that the provision at issue did "not arbitrarily discriminate on the basis of age among early retirees who choose this option because it does not diminish benefits as the age of its participants increases." *Id.* at 114. The court recognized that although "some older retirees who do not participate in the plan will not receive its benefits, . . . . their loss of plan benefits is due to their election to refrain from exercising their early retirement option during the relevant window of opportunity (which was the same length of time for all eligible employees), and *not because they participated in the plan, yet retired at a later age.*" *Id.* (emphasis added). The court found that the clause at issue was easily distinguishable from the provision considered by the Seventh Circuit in *Karlen,* 837 F.2d 314:

The plaintiffs in *Karlen* attacked a retirement plan that offered retirees a lump sum payment based upon a variable percentage of their accumulated sick pay, depending upon their age at the time of retirement. This percentage rose from 50 percent at age 55 to 80 percent at age 64, but fell to 45 percent after age 64.

The *Karlen* plan arbitrarily discriminated on the basis of age among those within the group eligible for early retirement benefits. The incentives gradually increased between ages 55 and 64, but dropped off precipitously for those participants who retired after age 64. As a result, some plan participants received greater incentives than others solely because they retired at a more optimal age under the plan. The employer offered no reason other than age for this downward sliding scale of incentive benefits.

*An early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older workers conflicts with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment.*

*Auerbach,* 136 F.3d at 114 (citations omitted) (emphasis added).

■ Here, pursuant to Section 10(g), the amount of payment for accumulated sick leave was reduced from 100% in the first year of eligibility to 80%, 75% and 70% during the second, third and fourth years of eligibility, respectively. Thus, Section 10(g) is virtually identical to the clause at issue in *Karlen* in that both provisions provided for diminished benefits as the age of the participants increased. Accordingly, the Court holds that Section 10(g) conflicts with the purposes of the ADEA and thus arbitrarily discriminates on the basis of age. Defendant therefore cannot satisfy the affirmative defense of Section 623(f)(2)(B)(ii).

## CONCLUSION

For the reasons stated above, the motions by the O'Brien Plaintiffs in case number 94 CV 4695, and the EEOC in case number 95 CV 0092, for summary judgment on the issue of liability are **GRANTED.** Defendant's cross-motion for leave to amend its answer in case number 95 CV 0092 is **DENIED** as futile. Finally, Defendant's cross-motion for summary judgment in case numbers 94 CV 4695 and 95 CV 0092 is **DENIED.**

**SO ORDERED.**