Dr. Robert GUTCHEN and Dr. Janice Sieburth, Plaintiffs,

v.

BOARD OF GOVERNORS OF the UNIVERSITY OF RHODE ISLAND and Robert Carothers, President of the University of Rhode Island, in his individual and official capacities, Defendants.

No. CA. 99–319 L.

United States District Court, D. Rhode Island.

June 21, 2001.

Marc Gursky, Holly K. Herndon, Providense, RI, Thomas W. Osborne, AARP Foundation Lit., Washington, DC, for plaintiffs.

Jay S. Goodman, Providence, RI, for defendants.

### OPINION AND ORDER

LAGUEUX, District Judge.

This case is before the Court on defendants' motion for summary judgment. Dr. Robert Gutchen and Dr. Janice Sieburth (collectively "plaintiffs") brought suit against the Board of Governors of the University of Rhode Island and Robert Carothers, President of the University of Rhode Island, in his individual and official capacities (collectively "defendants") alleging that the voluntary retirement incentive plan ("VRIP") which plaintiffs accepted from the University of Rhode Island ("URI") violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621–634 (1994 & Supp. IV 1998); Rhode Island's Fair Employment and Practices Act, R.I. Gen. L. §§ 28–5–1–28–5–42 (2000); and Rhode Island's Civil Rights Act of 1990, R.I. Gen. L. §§ 42–112–1–42–112–2 (1998 & Supp.2000). For the reasons discussed below, the Court

concludes that the VRIP as challenged by plaintiffs does not violate the ADEA, and grants defendants' motion for summary judgment on all counts.

**BACKGROUND.**

In April 1996, URI offered early retirement to some of its employees as a means of saving money. Toward that end, URI offered a VRIP to those non-classified faculty and staff who were: (1) employed for a minimum of twenty hours per week; (2) fifty-eight years of age or older as of July 1, 1996; and (3) who completed at least ten years of service at URI as of July 1, 1996. Those employees already participating in another early retirement or severance pay plan offered by the State of Rhode Island or the Board of Governors were not eligible to participate in this VRIP. The terms of the VRIP required that eligible employees who wanted to participate notify URI in writing between April 29, 1996 and May 31, 1996 of their intention to retire on July 1, 1996.

The employees who retired pursuant to the VRIP could decide between two retirement options. Under both options, retirees were no longer eligible for full time re-employment at URI, Rhode Island College, the Community College of Rhode Island, or the Office of Higher Education. In addition, both options indicated that participation in the VRIP was irrevocable.

In exchange for retiring on these terms, retirees received two benefits under both options. First, retirees received a one-time payment equal to 10% of their final year's base salary, which the retirees could receive in a lump sum or in equal installments over three years. Second, retirees received a health benefit stipend which was designed to provide the same medical coverage the retirees would have received had they continued working. This health benefit stipend was a significant incentive because without the VRIP retired URI professors would not receive health benefits.

In addition to the aforementioned common terms, the two options provided slightly different stipend terms. These differences form the locus of plaintiffs' complaint in this case and therefore the Court will now address these differences in more detail.

Under Option I, URI would directly purchase the retiree's health benefit insurance until the retiree either reached age seventy-two or died, at which point these payments would cease. The health insurance plans available to the retiree were equivalent to benefits made available to retired Rhode Island state employees by carriers that accepted direct payments by URI. The amount of the retiree's stipend depended on the retiree's anticipated cost for health insurance. Retirees age fifty-eight through sixty-four received $5,000 per year toward their health insurance, whereas retirees age sixty-five through seventy-one received $2,000 per year toward their health insurance because they were eligible for Medicare. Relying on the Social Security and Medicare tables of 1995, URI concluded that the federal government's contribution to a retiree's health insurance through Medicare reduced a retiree's out-of-pocket expense for health insurance from $5,000 to $2,000. URI tailored the health benefit stipend to reflect the retiree's actual cost for health care coverage and that enabled all retirees to receive medical coverage equivalent to the coverage they received before retiring. Therefore, under Option I, any retiree, regardless of age, who purchased a plan which cost more than URI's contribution would be responsible for the difference. In contrast, any retiree whose plan cost less than the University's contribution would receive the difference in cash. Finally, under Option I, those retirees who

received health benefit payments as members of the State Employee Retirement System would have their URI contribution reduced by an amount equivalent to the state payments.

Under Option II, rather than pay the health insurance premium directly to the insurance company, URI would pay the equivalent amount to the retiree as a health benefit stipend. Like Option I, a retiree would receive $5,000 per year from age fifty-eight through age sixty-four and $2,000 per year from age sixty-five through age seventy-one. Again, these payments would cease when the retiree died or reached age seventy-two. Under Option II, however, the payments would not be reduced if the retiree received health benefit payments under the State Employee Retirement System.

Ultimately, plaintiffs decided not to participate in the VRIP and allowed the offer to lapse on May 31, 1996. Some six months later, plaintiffs apparently changed their minds. In December 1996, Dr. Gutchen requested that URI allow him to retire under the terms of the VRIP. After some negotiations, URI granted Dr. Gutchen's request and allowed him to retire under Option II of the VRIP. In a letter to Interim Dean Winifred E. Brownell, Dr. Gutchen accepted the terms of the VRIP "that had been put into effect at the end of the 1996 Spring semester." Assistant Provost Clifford H. Katz Aff., June 28, 2000, at attachment E (letter from Dr. Gutchen to Winifred E. Brownell, Interim Dean College of Arts and Sciences, of 12/12/96 at 1–2).[1] Later that month, Dr. Sieburth also requested and

was granted inclusion under the VRIP. Katz Aff., June 28, 2000, at attachment E (letter from Dr. Sieburth to Robert L. Carothers, President of URI, of 12/23/96 at 1).

Shortly after URI granted plaintiffs' tardy requests to be included under the terms of the VRIP, plaintiffs attacked the plan as discriminatory. On February 13, 1997, plaintiffs, through the URI chapter of the American Association of Retired Persons, filed a grievance regarding the VRIP. Further, both plaintiffs filed discrimination charges with the Rhode Island Commission for Human Rights. Dr. Gutchen filed on March 28, 1997, and Dr. Sieburth followed suit on April 15, 1997. The basis for plaintiffs' attack on the VRIP is that URI allowed two other professors, Dr. Norman Coates and Dr. Fay Zipkowitz, to retire at the same time and under the same terms as plaintiffs.[2] This is significant because unlike her three colleagues, who were all age sixty-four or older, Dr. Zipkowitz retired at age fifty-eight. Therefore, under the VRIP, Dr. Zipkowitz would receive a $5,000 health benefit stipend while plaintiffs received a $2,000 health benefit stipend. This difference apparently prompted plaintiffs to claim discrimination despite their active efforts to gain inclusion under the VRIP.

The alacrity with which plaintiffs filed discrimination charges after requesting permission to retire under the VRIP's terms suggests that they may have had questionable motives in signing up for the VRIP. However, their motives in bringing this action and the cleanliness of their

---

**1.** In his letter, Dr. Gutchen also accepted the terms of the agreement permitting his continued involvement in the URI in England summer program, the details of which are relevant only to the extent that they affect defendants' equitable estoppel argument. As the Court does not reach that argument in this decision, the specifics of that aspect of Dr. Gutchen's agreement need not be discussed further.

**2.** Neither Dr. Coates nor Dr. Zipkowitz is a party to this action.

hands are of no import as the Court concludes that summary judgment for defendants is appropriate because the VRIP does not violate the ADEA and it is not necessary to reach the equitable estoppel issue raised by defendants.

## JURISDICTION

The Court has federal question jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (2001) and supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) (2001).

## SUMMARY JUDGMENT STANDARD.

Rule 56(c) of the Federal Rules of Civil Procedure sets forth the standard for ruling on a summary judgment motion:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is appropriate when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Typically, in deciding a motion for summary judgment, the Court must view the facts in the record, and draw all reasonable inferences therefrom, in the light most favorable to the nonmoving party. *Springfield Terminal Ry. Co. v. Canadian Pac. Ltd.*, 133 F.3d 103, 106 (1st Cir.1997); *Cont'l Cas. Co. v. Canadian Universal Ins. Co.*, 924 F.2d 370, 373 (1st Cir.1991). In this instance, however, plaintiffs have failed to provide the Court with a statement of disputed material facts as required by Local Rule 12.1. Accordingly, the Court accepts the facts as they appear in defendants' Local Rule 12.1 statement of undisputed facts in support of their motion for summary judgement. Local Rule 12.1 provides that "[a]ny party opposing such a motion [for summary judgment] shall serve and file, together with the opposing memorandum of law required under Rule 12 of these Rules, a concise statement of all material facts as to which he contends there is a genuine issue necessary to be litigated." D.R.I.R. 12.1(a)(2). Moreover, in deciding a motion for summary judgment:

> the court may assume that the facts as claimed by the moving party are admitted to exist without controversy except as and to the extent that such facts are controverted by affidavit filed in opposition to the motion, or by other evidentiary materials which the court may consider under Rule 56 of the Federal Rules of Civil Procedure.

D.R.I.R. 12.1(d). The First Circuit has stated that parties ignore local rules at their own peril. *Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000). Rules such as Local Rule 12.1 provide needed structure to the summary judgment process and ensure that district court judges are not unfairly waylaid by unrevealed factual issues. *See id.* (quoting *Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 931 (1st Cir.1983)). Consequently, plaintiffs' failure to comply with Local Rule 12.1 results in this Court accepting as undisputed the facts provided by defendants and addressing the questions of law accordingly. *See id.*

## DISCUSSION

Plaintiffs challenge the VRIP as being facially invalid because it provides a $5,000 per year health benefit stipend to retirees who are younger than sixty-five and only a $2,000 per year health benefit stipend to those retirees who are sixty-five or older. The ADEA prohibits discrimination by em-

ployers in the "compensation, terms, conditions, or privileges of employment" against individuals over forty years old. 29 U.S.C. § 623(a)(1). This prohibition extends to early retirement benefit plans. *See* 29 U.S.C. § 630(*l*). Plaintiffs claim that the VRIP violates 29 U.S.C. § 623(a)(1) because it discriminates against older retirees with respect to this privilege of employment because of their age.

Defendants disagree and offer two main arguments in support of their motion for summary judgment. First, defendants assert that the VRIP does not violate the ADEA because it falls within one of the statute's safe harbor provisions. *See* 29 U.S.C. § 623(f)(2)(B)(ii). Second, defendants argue that the common law concept of equitable estoppel applies to bar plaintiffs from bringing suit after they sought and gained inclusion in the VRIP even though it had already expired.

■ The ADEA's prohibitory language is strikingly similar to that of Title VII and courts have relied on Title VII precedent in interpreting the ADEA. *See Rodriguez–Morales v. Veterans Admin.*, 931 F.2d 980, 983 (1st Cir.1991). Because federal law guides Rhode Island law in the area of employment discrimination, this Court need only decide whether the conduct complained of by plaintiffs violates the ADEA. *See Newport Shipyard, Inc. v. R.I. Comm'n for Human Rights*, 484 A.2d 893, 897–98 (R.I.1984)(stating that Rhode Island Courts look to federal decisions relating to the Civil Rights Act of 1964 for guidance in employment discrimination cases); *E.G. & G Sealol, Inc. v. R.I. Comm'n for Human Rights*, No. PC–93–0836, 1994 WL 930944, at *3 (R.I.Super. July 6, 1994)(applying the holding in *Newport Shipyard*, 484 A.2d at 897–98, to an age discrimination case).

Plaintiffs sole dispute with the VRIP is that it unfairly discriminates on the basis of age in that plaintiffs received a $2,000 per year health benefit stipend, whereas a retiree under age sixty-five received a $5,000 per year health benefit stipend. Plaintiffs have neither alleged nor argued that the cut off of the stipend at age seventy-two is discriminatory or otherwise violates the ADEA. Therefore, that matter is not before the Court and the Court expresses no opinion on that subject matter.

■ As the facts before the Court are undisputed and plaintiffs' challenge relates only to the difference in the amount of the stipend, the question before the Court can be stated as follows: As a matter of law, does URI's VRIP fall within a safe harbor provision of the ADEA because it decreases the health benefit stipend in proportion to Medicare coverage? The Court agrees with defendants that the aspect of the VRIP challenged by plaintiffs falls within the ADEA's safe harbor provision contained in § 623(f)(2)(B)(ii). Accordingly, the Court grants summary judgment for defendants on that ground and does not reach defendants' equitable estoppel arguments.

■ The ADEA, as amended by the Older Workers Benefit Protection Act of 1990 ("OWBPA"), provides employers with an affirmative defense to age discrimination claims. *See* 29 U.S.C. § 623(f)(2)(B)(ii). To establish this affirmative defense, defendants must show that the VRIP was both voluntary and furthered the purpose of the ADEA. 29 U.S.C. § 623(f)(2)("An employer ... shall have the burden of proving that such actions are lawful in any civil enforcement proceeding brought under this chapter."). The statute provides, in relevant part that "[i]t shall not be unlawful for an employer, ... (2) to take any action otherwise prohibited ... (B) to observe the terms of a

bona fide employee benefit plan ... (ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of this chapter." *Id.* An employer, therefore, does not violate the ADEA if that employer can show that the early retirement incentive plan offered was voluntary and comported with the purpose of the ADEA.

▮ In this case, the VRIP was certainly voluntary. In December 1996, plaintiffs themselves sought to be included under the VRIP's terms, even though they had failed to sign up prior to the May 31, 1996 deadline. Their delay gave them ample time to study and evaluate the VRIP, especially considering that the VRIP was first made public in April 1996. *See Auerbach v. Bd. of Educ. of the Harborfields Central Sch. Dist. of Greenlawn,* 136 F.3d 104, 113 (2nd Cir.1998)(concluding that four months was a reasonable period of time for teachers contemplating accepting a voluntary early retirement package to "reflect and weigh their options"); *see also* S. Rep. 101–263, at 27 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1532 (stating that voluntariness requires that employees receive sufficient time to consider their options). Although plaintiffs offer some token resistance on the issue of voluntariness, they have never suggested that any administrator at URI threatened them with termination of their employment or the imposition of abhorrent working conditions, or any other form of retribution if either plaintiff refused to agree to the terms of the VRIP. *See Vega v. Kodak Caribbean, Ltd.,* 3 F.3d 476, 480 (1st Cir.1993)(stating that "the law regards as the functional equivalent of a discharge those offers of early retirement which, if refused, will result in work so arduous or unappealing, or working conditions so intolerable, that a reasonable person would feel compelled to forsake his job rather than to submit to looming indignities"). Furthermore, the Senate Committee Report relating to the OWBPA, the most recent major amendment to the ADEA, states that "[t]he critical question involving allegations of involuntary retirement is whether, under the circumstances, a reasonable person would have concluded that there was no choice but to accept the offer." S.Rep. No. 101–263, at 27 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1532. In this case, no reasonable person could conclude that plaintiffs' participation in the VRIP was anything but voluntary as they considered the plan for more than half a year, and actually requested to be allowed to retire pursuant to its terms.

The VRIP also meets the second requirement for inclusion under the safe harbor provision of § 623(f)(2)(B)(ii) in that it is consistent with the underlying purpose of the ADEA. Congress articulated three aims in enacting the ADEA: "to promote employment of older persons based on their ability rather than age; to prohibit arbitrary age discrimination in employment; [and] to help employers and workers find ways of meeting problems arising from the impact of age on employment." 29 U.S.C. § 621(b). *See also* S. Rep. 101–263, at 27 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533 (citing same). Functionally, the ADEA prohibits employers from discriminating against older workers in employment and the benefits resulting therefrom on the basis of age. Because the VRIP at issue does not discriminate on the basis of age, it meets the second requirement for inclusion under the safe harbor provision.

▮ In this case, URI's VRIP complies with the ADEA because it enables all retirees to purchase the same medical coverage regardless of their age. URI's purpose in offering the health benefit stipend

payments in differing amounts "was to leave all retirees of all ages in the same position as to their level of medical care." Defs.' Local 12.1 Rule Statement of Undisputed Facts in Supp. of Their Mot. for Summ. J. at ¶ 13. Absent the VRIP, a URI employee's health benefits terminate upon retirement. *Id.* at ¶ 5. The difference in the amounts paid in benefits to retirees hinged on the approximate cost of providing the same level of health benefits to the retirees, and did not depend on their age. *Id.* at ¶¶ 10–11. URI consulted the 1995 Health Insurance Open Enrollment sheets market and the 1995 Social Security and Medicare Fact sheets and concluded that to obtain the same medical coverage, retirees age fifty-eight through sixty-four would pay approximately $5,000, while retirees age sixty-five through seventy-one would pay $2,000 to supplement Medicare. *Id.* at ¶¶ 12, 14. Therefore, the health benefit stipend was "designed specifically to insure that all eligible employees were treated the same and were not required to pay for health care benefits out of their own pockets." *Id.* at ¶ 16. In failing to file a statement of disputed facts as required by Local Rule 12.1, plaintiffs waive any challenge to these facts and the Court accepts them as true.

Although the discrepancy in the VRIP's health benefits stipend depends on Medicare eligibility, which is inextricably tied to the retiree's age, the VRIP does not violate the ADEA because federal regulations expressly permit such a distinction. Under 29 C.F.R. § 1625.10(e) (2000), entitled "Benefits provided by the Government," "[a]n employer does not violate the [ADEA] by permitting certain benefits to be provided by the Government, even though the availability of such benefits may be based on age." *Id.* In fact, the specific example provided in the federal regulations relates to health benefits and Medicare. The regulations state that "it is

not necessary for an employer to provide health benefits which are otherwise provided to certain employees by Medicare." *Id.* The one caveat is that the combined government-provided and employer-provided benefits for a Medicare-eligible retiree may not be less than the employer-provided benefits to a similarly situated, younger retiree. *Id.*

■ Furthermore, the OWBPA's legislative history indicates that Congress intended to protect plans like the URI VRIP. The Senate Committee's report states that "[t]he Committee intends to approve the ... practice of integrating retiree health benefits with Medicare, which is already permitted under the regulation. *See* 29 C.F.R. 1625.10(e)." S.Rep. No. 101–263, at 21 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1527. Although arising in the context of continuous benefit plans rather than voluntary retirement incentive plans, the Senate Committee's statement is highly relevant to the question of whether a voluntary retirement incentive plan is consistent with the purpose of the ADEA. Because the equal cost or equal benefit standard applied to continuous benefit plans, *see* 29 U.S.C. § 623(f)(2)(B)(i), is more rigorous than the requirement that voluntary retirement incentive plans be consistent with the purpose of the ADEA, it logically follows that any voluntary retirement incentive plan that conforms to that higher standard passes the less restrictive test. *See Auerbach*, 136 F.3d at 112. Therefore, the federal regulations and the OWBPA's legislative history clearly provide that voluntary retirement plans do not violate the ADEA if all the retirees receive the same medical coverage, even if a portion of the medical coverage for some retirees is provided by the Government. Plaintiffs do not contest defendants' assertion that the $2,000 health benefit stipend combined

with Medicare benefits provides the same medical coverage that younger retirees can purchase with their $5,000 health benefit stipend. Hence, summary judgement in favor of defendants is warranted.

Although both parties cite *Erie County Retirees Ass'n v. County of Erie, Pa.*, 220 F.3d 193 (3rd Cir.2000) in support of their respective positions, that case is distinguishable from the case at bar, and provides little support for either party. In *Erie County*, the Third Circuit decided that the ADEA applied when an employer offered a continuous benefit plan in which its Medicare-eligible retirees health insurance coverage was allegedly inferior to the coverage provided to retirees not eligible for Medicare. *Id.* at 196. The district court had granted the County's motion for partial summary judgment, but the Third Circuit reversed and remanded the case to the district court indicating that unless the County could demonstrate that its plan fell within the ADEA's equal cost or equal benefit safe harbor provision, *see* 29 U.S.C. § 623(f)(2)(B)(i), the plan violated the ADEA. *Erie County*, 220 F.3d. at 217.

In the case at bar, however, plaintiffs do not allege that their medical coverage is in any way inferior to that enjoyed by younger retirees. Plaintiffs never claimed that their stipend when combined with Medicare benefits enabled them to purchase less medical coverage than those retirees who were not eligible for Medicare. Instead, plaintiffs argued simply that the difference in the amount of the stipend is facially discriminatory. Further, defendants in this case demonstrated that the VRIP as challenged falls within the ADEA's safe harbor provision. The undisputed facts indicate that the yearly health benefit stipends enable all retirees to purchase equivalent medical coverage. *See* Defs.' Local 12.1 Rule Statement of Undisputed Facts in Supp. of Their Mot. for Summ. J. at ¶ 12. Therefore, there is no discrimination and plaintiffs' challenge must fail.

Moreover, to the extent that it is relevant, when plaintiffs signed up for the VRIP, they knew that these cash payments were health benefit stipends and not merely cash pay-outs unrelated to plaintiffs' health insurance. On December 13, 1996, Dr. Gutchen signed a form entitled "Request For Monthly Payroll." Assistant Provost Clifford H. Katz Aff., September 25, 2000, at attachment A. Under the heading "Work Assignment," the form states "Retirement Incentive Health Stipend Payout." *Id.* Under that text, the form lists the amounts Dr. Gutchen was to receive from 1996 through 2003 pursuant to Option II of the VRIP. *Id.* Likewise, the "Request For Monthly Payroll" form signed by Dr. Sieburth states under the heading "Work Assignment," "Retirement Incentive Health Stipend." *Id.* at attachment B. Again, under this language, the form lists the health stipend payments to be made to Dr. Sieburth pursuant to Option II. *Id.* Although the Court recognizes that merely labeling payments a "Health Benefit Stipend" does not necessarily make them a health benefit stipend, the tables relied on by URI, which are also included in the record, indicate that the decrease in the amount of the payments corresponds with the anticipated benefits of Medicare. *See* Katz Aff., June 28, 2000, at attachments B, C, and D. Moreover, despite ample opportunity, plaintiffs have not challenged defendants' statements that these payments constituted a health benefit stipend and were sufficient to provide medical coverage equivalent to that available to non Medicare-eligible retirees.

Despite the existence of the aforementioned forms, at oral argument on September 19, 2000, plaintiffs' counsel argued that plaintiffs were not aware that these pay-

ments were for health benefits. Due to the apparent confusion on that point, the Court gave defendants ten days to file any affidavits related to that issue and plaintiffs ten days thereafter to file any counter affidavits. Defendants filed the September 25, 2000 affidavit of Assistant Provost Clifford H. Katz and attached the above mentioned "Request For Monthly Payroll" forms. Plaintiffs, however, filed no affidavits related to this issue. Accordingly, the Court concludes that plaintiffs knew that these payments were for health benefits.

Rather than marshal evidence to contest defendants' assertions that these payments were health benefit stipends, plaintiffs rely entirely on their argument that the VRIP is facially discriminatory. They cite several cases from other Circuits for the proposition that early retirement incentive plans which reduce benefits on the basis of age violate the ADEA. *See e.g., Solon v. Gary Cmty. Sch. Corp.*, 180 F.3d 844 (7th Cir. 1999); *Karlen v. City Colls. of Chicago*, 837 F.2d 314 (7th Cir.1988); and *O'Brien v. Bd. of Educ. of the Deer Park Union Free Sch. Dist. Deer Park Pub. Sch.*, 92 F.Supp.2d 110 (E.D.N.Y.2000), *adhering to prior decision after reconsideration*, 127 F.Supp.2d 342 (E.D.N.Y.2001). But these cases are inapposite because none of them relate to a reduction of benefits proportionate to government payments. The voluntary retirement plans at issue in *Solon, Karlen,* and *O'Brien* merely reduced benefits because of the retiree's age, and not because those benefits were already being provided by the government. Here, the reduction from $5,000 to $2,000 in the health benefit stipend, which is the only issue raised by plaintiffs, was based not on age but on the retiree's out-of-pocket cost for purchasing health insurance. Because those retirees older than sixty-five received some medical coverage through Medicare, URI decreased their stipend to reflect the government's contribution, a decision which is expressly permitted by the federal regulations. *See* 29 C.F.R. 1625.10(e).

■ In addition, although plaintiffs failed to raise the issue, the Court notes that it is not relevant that the health benefit stipends were paid directly to the retiree rather than to an insurance company. As discussed above, plaintiffs do not contest that the stipend was both for health benefits and sufficient for all the retirees to purchase equivalent medical coverage. Nonetheless, the issue merits some discussion. When URI first offered the VRIP, the plan gave retirees a choice between two options. Option I provided that URI would pay the retiree's health insurance premium directly to the insurance company. Under Option II, URI would make the same payment to the individual, rather than the insurance company. In December 1996, more than six months after the first offering of the VRIP lapsed, URI permitted four professors, including plaintiffs, to retire pursuant to Option II. Although Option I was not made available to any of the four retirees in December, 1996, this does not change the nature of the payments made under Option II. Those payments provided all four retirees with the cash equivalent of their out-of-pocket health insurance costs. Rather than harm plaintiffs, these cash payments actually benefitted plaintiffs and the other retirees because they could use the money in the manner they deemed most beneficial to them. The record clearly shows that URI intended that the money be used for health benefits and that the sums given to the retirees correlated with the amounts necessary to purchase health insurance. There is nothing in the record, however, that indicates that the retirees were required to spend their stipend on medical care. If a retiree received medical insurance from another source, was satisfied

with the coverage provided by Medicare, or even if a retiree opted not to purchase medical insurance at all, the cash payments merely gave the retiree the choice of how to use the stipend. Giving a retiree, regardless of age, the option to spend his health benefit stipend in the manner of his own choosing does not violate the ADEA. To be sure, a case might arise where the cash payments were merely a subterfuge for discrimination. But in this case, where it is uncontroverted that the payments were for health benefits and where the amounts paid correlate to those necessary for retirees to secure equivalent medical coverage, the cash payment is advantageous to the retiree.

In short, the health benefit stipend component of the VRIP complies with the ADEA. The ADEA ensures equal, not preferential, treatment for older employees. There is no violation of the ADEA when the employer provides the same level of benefits to older workers as to younger workers. *See* 29 C.F.R. § 1625.10(a)(2). The payments made pursuant to the VRIP enabled all the retirees to secure the same medical coverage regardless of their age. Therefore, the VRIP treated retirees equally. In fact, the differing amounts ensured that the younger retirees received the same medical coverage as their older colleagues. The ADEA was not intended to provide older workers with a windfall just because they are older. Instead, it ensures them equal treatment. In this case, the health benefit stipends paid to retirees enabled all retirees to purchase the same medical coverage. Therefore, the Court concludes that the VRIP falls under the statutory safe harbor provision and therefore grants summary judgment for defendants.

## CONCLUSION

Because the decrease in health stipend disputed by plaintiffs falls within the statutory safe harbor provision, *see* 29 U.S.C. § 623(f)(2)(B)(ii), the Court grants defendants' motion for summary judgment. The Clerk shall enter judgment for defendants forthwith.

It is so ordered.