**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**
Plaintiff,

v.

**HICKMAN MILLS CONSOLIDATED SCHOOL DISTRICT NO. 1,**
Defendant.

No. 98–1296–CV–W–3.

United States District Court, W.D. Missouri, Western Division.

May 24, 2000.

Barbara A. Seely, Equal Employment Opportunity Commission, St. Louis, MO, Thomas M. Larson, U.S. Attorney's Office, Kansas City, MO, for Equal Employment Opportunity Commission, plaintiff.

Jill A. Kanatzar, Stigall, Humphrey, Lucas, Henry, Stigall & Dollar, L.C., Kansas City, MO, for Hickman Mills Consolidated School District No. 1, defendant.

1. The Court uses the masculine pronoun to identify any singular employee of Hickman Mills throughout this order. However, its purpose is to identify both male and female district employees.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

SMITH, District Judge.

Pending before the Court are several motions including Plaintiff's Motion for Summary Judgment (Doc. # 34) and Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (Doc. # 36). The former motion is granted and the latter motion is denied.

### 1. Background

Hickman Mills Consolidated School District No. 1 ("Hickman Mills") is located within the metropolitan area of Kansas City, Missouri. Hickman Mills employs teachers, administrators, and support personnel necessary for the operation of the school district. The teachers and administrators are identified as certificated employees and those on the support staff are known as classified employees.

A teacher's salary is calculated based upon his or her educational level and years of educational experience. The salary schedule provides for monied step increases each year up to a maximum for each degree level possessed by the teachers and administrators. Once a teacher reaches the top step for their degree, he[1] progresses no further but does receive a yearly longevity pay increase. Most classified employees also progress through salary levels and attain the maximum salary after a period of years.

1. Plans dated July 1, 1989 to June 30, 1991

From July 1, 1989, until June 30, 1991, Hickman Mills maintained and administered an early retirement incentive plan ("ERIP") covering certificated employees.

The ERIP provided that any employee who was otherwise eligible would receive a lump sum benefit equal to 50% of that employee's final base pay if that employee retired at age 55. The ERIP provided that the benefit would be decreased by 5% for every year the employee continued to work until age 65 at which time the employee would fail to receive any benefits upon retiring. A certificated employee was eligible to participate in the ERIP if he (1) was 55 years old and had 10 years service with Hickman Mills or (2) had 30 years of creditable service within the Public School Retirement System of Missouri ("PSRS") which administered the pension plans covering public school employees.

During this same time period, Hickman Mills maintained and administered a similar ERIP covering classified employees. The ERIP provided that any classified employee who was otherwise eligible would receive a lump sum benefit equal to 25% of the employee's base pay if that employee retired at age 60. This benefit decreased 5% every year until the employee turned 65. At age 65, the benefit would be reduced to zero. A classified employee was eligible to participate in the ERIP if he (1) was 60 years old and had 13 years service with Hickman Mills or (2) had 30 years of service with Hickman Mills.

Both the certificated and classified ERIPs were published in the Policies of the Board of Education and continued each year unless terminated or modified by the school district. In each section of the 1989–1990 and 1990–1991 plan policies, the following language was provided: "[t]he early retirement incentive plan is designed to . . . [p]rovide for a more balanced staff age blend." (Ex. 2, 1989–1990 Policies, pp.2043, 2052; Ex. 3 1990–1991 Policies, pp. 2253, 2262).

2. July 1, 1992–June 1, 1996 [2]

Effective July 1, 1992, the ERIP for certificated employees was revised. It provided that eligibility to participate in the ERIP required that an employee have completed 15 years of service with Hickman Mills and be eligible for full unreduced retirement with the PSRS. Once again, the language in the 1992 Policy declared that the ERIP was designed to "provide for a more balanced staff age blend" (Ex. 4 1992–1993 Policies, pp. 2478–81). These plans continued year after year until all were discontinued in 1996. The language "provide for a more balanced staff age blend" was incorporated into every plan for certificated employees.[3]

During this period, a certificated employee was eligible for full, unreduced retirement with the PSRS if (1) he was 60 years old with at least 5 years of credited service with the PSRS; (2) he was age 55 with at least 25 years of credited service; or (3) he had 30 years of credited service. If eligible, a certificated employee would receive a benefit in the amount of 50% of his base salary if he retired when he was first eligible for full retirement with the PSRS. If he continued to work another year and retired in his second year of eligibility, the amount would be reduced to 40% of his base salary. Every additional year worked would reduce the benefit by 10%. If the employee continued to work for more than 5 years after he was first eligible to retire, he would not receive any benefit.

Similar revisions were made to the classified employees' ERIP. During this period a classified employee was eligible for full, unreduced retirement if (1) he completed 15 years of service with Hickman Mills and (2) he met the requirement of eligibility for full retirement under the

---

2. The ERIP for the school year 1991–1992 is not in dispute since all eligible employees received the same amount of money for early retirement regardless of their age. The only criteria necessary for participation was qualification for retirement through the PSRS.

3. The language "provide for a more balanced staff age blend" was not included in the 1992–1995 classified employees ERIPs.

PSRS. A classified employee was eligible for full unreduced retirement under the PSRS if he was age sixty with at least five years of credited service or had thirty years of credited service. If eligible, a classified employee would receive an ERIP benefit in the amount of 25% of his base salary if he retired when he was first eligible for full retirement with the PSRS. If he continued to work another year and retired in his second year of eligibility, the amount would go down 20% of his base salary. Every additional year worked would reduce the benefit by 5%. If the employee continued to work for more than 5 years after he was first eligible to retire, he would receive nothing.

### 3. District Personnel [4]

Several depositions of district administrators shed light on the district's purpose in offering the ERIPs. Karen Swift, Director of Personnel from 1988 to June 1995 stated that she was responsible for the administration of personnel policies for Hickman Mills' employees. Ms. Swift testified that the amount of compensation that an employee received under the 1989–1991 ERIPs was dependent upon the age of the employee. (Ex. 8, Swift Dep., 44:10–13). She also testified that the desire for "a more balanced age blend" was to insure that there were younger people in the district's workforce as well as older individuals. (Ex. 8; Swift Dep., 41: B–13; 42: 1–11, 3: 8–13).[5]

John Dean was Associate Superintendent for Support Services from July 1, 1991 until December 1995. Dean was responsible for district finances and personnel matters regarding classified employees. Dean testified that the purpose of the ERIPs was to save the district money. (Ex. 1, Dean Dep., 39:11–40:4). However, only two studies were completed for certificated ERIPs while a study for savings generated by the classified ERIPs was never completed. Neither completed study fully explained the amount of monies saved through the offering of ERIPs.

Ron Goodwin was an Assistant Superintendent of Schools for Hickman Mills from 1988 to 1992, at which time he became Superintendent until October 1994. He testified that one of the purposes of the ERIP was to encourage older teachers to retire because there had been a concern in the community that there needed to be an infusion of younger teachers with "more modern training." Goodwin acknowledged that the purpose of providing for a more balanced staff age blend remained in the certificated ERIP after its revision in 1992. (Ex. 18, Goodwin Dep., 19:15–20; 21; 23:6–15; 24:1–26; 28:2–13; 29:1–8). Defendant contends that the language "a more balanced staff blend" remained in the policies after this year purely by mistake. Ex. B, Swift Dep. 47:1–19.

The EEOC file this lawsuit on December 15, 1998. The suit alleges that twenty-one certificated employees retired after the age of 55 during the period of November 22, 1989, through June 30, 1991. These certificated employees applied for and were eligible for benefits under the ERIPs in effect during this period of time. Each received between 25% and 50% of their final base pay pursuant to the ERIPs' terms. During this same period, eight classified employees retired after the age of 60. These classified employees applied for and were otherwise eligible for ERIP benefits. However, they received less than 25% of their final salary.

During the period July 1, 1993, through June 30, 1996, thirty-three certificated employees retired after they were first eligible for normal retirement under the PSRS.

---

4. Defendant objects to the Plaintiff's characterizations of the undisputed facts of the case. The Court has reviewed the pertinent depositions and fails to find any instance where the Plaintiff has taken this evidence out of context.

5. Defendant states that the terminology "age blend" really referred to "experience blend." Defendant's Response to Plaintiff's Motion for Summary Judgment.

They applied for and were otherwise eligible for ERIP benefits under the revised plans. However, they received between 25% and 50% of their final base pay pursuant to its terms. Twenty-nine were over the age of 55 at the time they retired. During the same period, nine classified employees retired after they were first eligible for retirement under the PSRS. They applied for and were otherwise eligible for benefits under the revised ERIP. Each received less than 25% of their final salary pursuant to its terms. All were over the age of 60 at the time they retired.

There are also three employees, two certificated and one classified, who retired at the age of 65. None of these employees received any benefit from any ERIP program offered by the Hickman Mills school district.

## 2. Discussion

### A. Standard of Review

A moving party is entitled to summary judgment on a claim only if "there is a showing that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Williams v. City of St. Louis,* 783 F.2d 114, 115 (8th Cir.1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 588–89, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### B. Age Discrimination in Employment Act/Older Worker Benefit Protection Act

Under the ADEA, an employee forty years of age and older is protected from an employer's discriminatory actions based upon age in the workplace. 29 U.S.C. §§ 621–634. Its purpose is to protect older employees from the loss of jobs during the later years of a worker's career. However, an ERIP is designed to encourage older workers to retire before their anticipated retirement age. Even though it appears that there is a conflict between the ADEA and the right of an employer to offer retirement incentive programs to employees, Congress has settled this inherent dichotomy.

In *Public Employees Retirement System v. Betts,* the Supreme Court decided that employee benefits were not protected by the ADEA. 492 U.S. 158, 109 S.Ct. 2854, 106 L.Ed.2d 134 (1989). The Court held that only hiring, firing, wages, salaries, and other non-fringe benefits were issues to be covered by the ADEA. *Betts,* 492 U.S. at 177, 109 S.Ct. 2854 (1989).

In 1990, Congress addressed the Supreme Court's ruling by passing the Older Workers Benefit Protection Act ("OWBPA"). The reasoning behind the passage of the OWBPA can be found in the legislative history. Congress endorsed the need for the OWBPA to be included under the ADEA to combat discrimination in employee benefits. *See* S.Rep. No. 101–263 at 5 (1990), reprinted in U.S.C.C.A.N. 1508, 1510.

Under the ADEA it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, condition, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Congress clarified that the ADEA "encompasses all employee benefits." *Id.* Therefore, while it is not unlawful to offer ERIPs, it is unlawful for an employer to condition early retirement benefits or reduce early retirement benefits on the employee's age. *Id.; see Solon v. Gary Community Sch. Corp.,* 180 F.3d 844 (7th Cir.1999); *Auerbach v. Bd. of Education,* 136 F.3d 104 (2d Cir.

1998) (holding that an early retirement plan which provides a flat sum and payment for accumulated sick pay is consistent with the purposes of the ADEA); *E.E.O.C. v. Crown Point Community School Corp.*, 1997 WL 54747 (N.D.Ind. 1997) (holding early retirement plans which determine amount of benefits based upon age are not consistent with the purposes of the ADEA).

■ The OWBPA also clarified the ADEA's affirmative defense for employee benefit plans, by establishing certain "safe harbor" affirmative defenses. 29 U.S.C. §§ 623(f)(2) and 623(*l*). "[V]oluntary early retirement incentive plan[s] consistent with the relevant purposes of the [ADEA] are not unlawful." 29 U.S.C. § 623(f)(2)(B)(ii). *See Auerbach v. The Board of Education of the Harborfields Central School District of Greenlawn*, 136 F.3d 104, 112–113 (2nd Cir.1998); *EEOC v. Crown Point Community School Corp.*, 1997 WL 54747 *6–7 (N.D.Ind.1997). Under 4(f)(2) as amended by the OWBPA, a defendant bears the burden to plead and prove the defenses and exceptions of the accepted safe harbors.

Even though the United States Court of Appeals for the Eighth Circuit has never addressed the issue of age discrimination in ERIPs, the Sixth, Seventh, and Second Circuits have all analyzed ERIPs under similar facts that are before the Court today.

**C. Plaintiff's Summary Judgment Motion**

■ The ERIPs offered to Hickman Mills' employees provided fewer benefits to older employees based upon an age criterion. Under the ADEA, if an employer relies on a formal facially discriminatory policy that requires adverse treatment of employees based upon age, a protected trait, there is direct evidence of discrimination. Absent direct evidence, the Plaintiff would have to present circumstantial evidence that age was the motivating factor for the denial of the ERIPs benefits. *See Lewis v. Aerospace Community Credit*

*Union*, 114 F.3d 745, 750 (8th Cir.1997); *E.E.O.C. v. McDonnell Douglas Corp.*, 191 F.3d 948, 950 (8th Cir.1999).

Every Hickman Mills ERIP offered to the certificated and classified employees used age either explicitly or implicitly as the determining factor of the amount of incentive payment for early retirement. In addition, all plans except for the 1992–1995 classified employee ERIPs contained language that the purpose of the plans was to provide a better "age blend" and create a younger working staff.

**1. 1990–1991 ERIPs**

■ The record conclusively establishes that the 1990–1991 ERIPs were discriminatory on their face. A policy is facially discriminatory and constitutes direct evidence when the terms of the policy classify employees based upon their protected trait, without regard to the employer's motives for using the protected trait in such a manner. *U.A.W. v. Johnson Controls, Inc.*, 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991). "Whether an employment practice involves disparate treatment through explicit facial discrimination does not depend on why the employer discriminates but rather on the explicit terms of the discrimination." *Id.* Each benefit plan reduced the benefits available based solely upon the age of the employee. This is direct evidence of discrimination, so Plaintiff need not prove that Hickman Mills intended to discriminate on the basis of age. Intent of discrimination can be presumed.

**2. 1992–1996 ERIPs**

The 1992–1996 plans incorporated a different set of criteria in order to be eligible for the ERIP benefit. For example, certificated employees were eligible for the benefit if they had fifteen years of service with Hickman Mills and met the requirements for unreduced retirement with PSRS (sixty years of age with at least five years of credited service, fifty-five years of

age with at least twenty-five years of service, or at least thirty years of service). The classified employees were eligible for the ERIP benefit if the employees had fifteen years of service with Hickman Mills and met the requirement of eligibility for full retirement under PSRS (sixty years of age with at least five years of credited service with the PSRS or had thirty years of service).

The 1992–1996 plans did not specifically determine the amount of benefits based upon the age of the employees as did the previous 1990–1991 plans. But the effect of the new plans continued to violate the ADEA under the disparate impact theory.

 A disparate impact claim challenges "employment practices that are facially neutral in their treatment of different groups but in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). Disparate impact claims are cognizable under the ADEA. *Lewis v. Aerospace Community Credit Union,* 114 F.3d 745, 749 (8th Cir.1997). To establish a claim for disparate impact under the ADEA, the Plaintiff must "identify and challenge a facially-neutral employment practice, demonstrate a disparate impact upon the group to which he or she belongs, and prove causation." *Id. (quoting Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). A prima facie case of disparate impact may be established by statistical evidence. *Id.*

 Plaintiff has met this burden. Plaintiff has presented statistical evidence to the Court that demonstrates the discrimination inherent in these plans. Dr.

Robert Sorensen, a statistical expert witness, has analyzed the retirement incentive benefits paid to the certificated and classified employees under the 1992–1996 plans. He has performed regression analyses to estimate the relationship between the percent of salary received as a retirement benefit and age to estimate the relationship between the dollar amount of retirement benefits received and age. His conclusion is that as age at retirement went up, the average percent and dollar amount of benefit went down. (Ex. 29, Sorensen Report) Even the Defendant's expert agreed with Dr. Sorensen's conclusions, testifying "[t]here is clearly a link between the amount of early retirement pay received and age and Dr. Sorensen's report indicated that." (Ex. 30, Hubbell Dep., 40:5–7).[6] Defendant failed to offer any evidence to dispute these findings.

Hickman Mills argues that the Court should find that the 1992–1996 ERIPs were not discriminatory because the plans' incentive amounts were not tied to the age of the employee but rather to the retirement eligibility under the PSRS. Defendant's arguments fail on two levels. First, the plans were discriminatory based upon the statistical evidence presented by the Plaintiff and agreed with by the Defendant's expert—the plans had an adverse impact on older employees who retired under them. Second, one of the plan's stated purposes (at least for the certificated employees) was to "[p]rovide for a more balanced staff age blend." *See* Defendant's Ex. 4. Such language clearly demonstrates an intent to discriminate against older employees without the need for the Plaintiff's to prove that the plans were discriminatory.[7]

6. Plaintiff has filed a Motion to Strike the Designation and Proposed Testimony of Defendant's Proposed Expert L. Kenneth Hubbell (Doc. # 26). The Plaintiff uses part of Mr. Hubbell's deposition in its brief for Summary Judgment. It appears that Plaintiff's objections to Mr. Hubbell's testimony are withdrawn.

7. Defendant argues that the offending language was left in by mistake after revising the plans. Ironically, the offending language was left in every certificated ERIP from 1992–1996 but removed from the classified plans in the years 1992–1995. The Court finds Defendant's reasoning questionable since such a dramatic mistake should have been caught and corrected.

Defendant also declares that the intent in offering a reduction of benefits based upon the employee's age was to encourage employees to retire as soon as they were eligible for full retirement. Defendant cites *Lyon v. Ohio Education Assoc. and Professional Staff Union,* 53 F.3d 135, 136 (6th Cir.1995) in support of this legal argument.

In *Lyon,* the Plaintiffs challenged an ERIP which provided a greater benefit to teachers who retired at an earlier age than those who retired at a later age. *Id.* The ERIP benefit was calculated based upon a numerical formula which determined the years the employee could have worked until the normal retirement age of 62 plus actual credited years of service multiplied by a percentage of average monthly compensation. The United States Court of Appeals for the Sixth Circuit held that this plan based the benefit upon imputed years of service and not the age of the beneficiary. *Id.* The Court declared that the plan did not discriminate as challenged by the plaintiffs. *Id.*

*Lyon* is not applicable in the present dispute. Here the Defendant's stated primary requirement was that each employee be eligible for full unreduced retirement from PSRS. In contrast to the case in *Lyon,* imputed years of service did not constitute a variable in the calculation of the ERIP's incentive payments.

Defendant relies on *Lyon* to argue that the Hickman Mills ERIPs did not reduce the benefit because the employees reached a certain age or grew another year older, but rather because the employee continued to work, which eliminated any potential savings to Hickman Mills.

But Defendant failed to submit any substantial proof of savings that would support this position. John Dean, the Associate Superintendent for Support Services, testified that the purposes of the ERIPs were those listed in the policies (including the "[p]rovide for a better age blend" language), one of which was to save the school district money. Ex. 1, Dean Dep., 39:11–

40:4. He continued to state that the projected savings provided by the ERIPs *were a matter of conjecture* but that if Hickman Mills replaced a retiring teacher with "a younger teacher" who did not make as much money, there would be a savings. *Id.* at 42:4–43:6 (emphasis added). Lastly, Dean testified that he never did a study of the savings generated by the classified ERIPs and that he only did a study of savings generated by the certificated ERIP twice. *Id.* at 47:12–18, 48:14–16.

Defendant argues that this view is endorsed by the Supreme Court's decision in *Hazen Paper Co. v. Biggins* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993), where the Supreme Court warned that an employee's age is analytically distinct from his years of service. *Id.* at 611, 113 S.Ct. 1701. Defendant is comparing apples and oranges. The ruling in *Hazen* dealt with vesting rights of an employee's opportunity to participate in a defined benefit plan. The question was not whether an employee's benefits would be reduced or non-existent based upon age but whether he would be eligible to participate in the retirement plan if the credited years of service did not meet the vesting requirement. Furthermore, the Supreme Court emphasized that age must motivate the employer's decision for the Plaintiff to state a prima facie case of disparate treatment. Otherwise if some other factor is the motivation, Plaintiff's claim fails.

Such is not the case in this particular matter. The Plaintiff has shown that age motivated Hickman Mills behavior without the Defendant presenting other motivating factors. Consequently, Plaintiff has stated a prima facie case of disparate impact and disparate treatment.

In addition, the Court declines to follow this line of reasoning for the simple fact that in Defendant's plans, two people could have the same years of credited service, be eligible for unreduced retirement, but retire at different ages and receive different

benefits. For example, consider two employees under the 1996 classified ERIP. If one employee had thirty years of service and retired at the age of forty-eight, the individual would receive the maximum amount of the ERIP, i.e., 25% of their base salary. However, if an employee was 61 years old with thirty years of service, their early retirement incentive benefit would be reduced from the maximum amount of 25% to 20% of their base salary.

The United States Courts of Appeal for the Second Circuit states that such a plan is not legal.

> An early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older workers conflicts with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment.

*Auerbach,* 136 F.3d at 114. *See also Solon v. Gary Community School Corp.,* 180 F.3d 844, (7th Cir.1999); *Karlen v. City Colleges of Chicago,* 837 F.2d 314 (7th Cir.1988). An employer cannot discriminate against employees based upon age.

Defendant argues that based upon this analysis, every ERIP which features declining benefits is illegal. The Court disagrees. An example of a legal declining benefit is a bridge payment which spans the money gap between an employee's age upon early retirement and the age at which the employee becomes eligible for social security payments. *Solon,* 180 F.3d at 854. The older an employee is when he retires, the smaller the amount of the bridge payments. However, the amount of bridge payment is not dependent on the age of the employee but on the amount of social security payments to be received. Congress has approved these types of declining benefits. *See* S.Rep. No. 101–263, at 21 (1990), reprinted in 1990 U.S.C.C.A.N. 1509.

Another example is a retirement plan that offers the same amount every for employees who choose early retirement. This is clearly legal. There is no negative impact on the early retirement incentive—every individual receives the same amount. In fact, the Defendant offered this very program in the 1991–1992 school year.[8] Other examples of legal ERIP plans include a flat fee for each year of service, flat dollar increases in pension benefits, and a certain percentage of salary per employee if they retire early. *See e.g.,* S.Rep. No. 101–263, at 28 (1990), reprinted in 1990 U.S.C.C.A.N.

### D. Affirmative Defenses

Defendant has asked the Court to overlook its failure to plead an affirmative defense and allow it to amend its pleadings. Even though delay alone is not a sufficient reason for denying Defendant's leave to amend, Hickman Mill's defense lacks merit. *See Buder v. Merrill Lynch, Pierce, Fenner & Smith Inc.,* 644 F.2d 690, 695 (8th Cir.1981). A motion to amend should be denied if the party's amendment clearly will not succeed on the merits. *Id.*

An ERIP is valid if it is voluntary and consistent with the ADEA's purposes. 29 U.S.C. § 623(f)(2)(B)(ii). This statement is true even if the plaintiff sets forth a prima facie case of age discrimination. The OWPBA imposes the burden on the employer to plead and prove the affirmative defenses in ADEA § 4(f)(2)(B).

The ERIPs offered to the employees of Hickman Mills were voluntary. Each year, the employees had several months to investigate and contemplate the offerings. But none of the plans were consistent with the purpose of the ADEA. Each plan as previously discussed discriminated against employees as they aged. Each ERIP is inconsistent with the purposes of the ADEA because it is not based on factors other than age. *See Solon,* at 850. The

---

8. This offering is not being challenged by the Plaintiff in the present suit.

ERIPs cut off benefits at age 65 on the assumption that most district employees would retire at this age. The ADEA prohibits this type of arbitrary age discrimination. *Id.* The Court declines to allow the Defendant to amend its pleadings, since it will not meet the requirements of the ERIP affirmative defense.

**D. Defendant's Motion to Dismiss or in the Alternative for Summary Judgment**

Defendant asks the Court to dismiss the Plaintiff's case since Hickman Mills is immune from suit under the ADEA pursuant to the Eleventh Amendment of the United States Constitution. Also, Hickman Mills seeks partial summary judgment for the ERIP plans in effect from 1992–1996. Both motions are denied.

 The Supreme Court has ruled that a State employer cannot be sued for monetary relief absent consent under the ADEA. *See Kimel v. Florida Bd. of Regents,* —— U.S. ——, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000). However, this case is not applicable.

 The Eighth Circuit has ruled that school boards are not entitled to the immunity provided by the eleventh amendment. *Miener v. State of Missouri,* 673 F.2d 969, 980 (8th Cir.1982). It follows that a school district would also not be immune. In order for Hickman Mills to "partake of the state's eleventh amendment immunity depends, at least in part, on the nature of the entity created by state law". *Mount Healthy City School District Bd. of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Narin v. Lower Merion Sch. District,* 206 F.3d 323, 331 (3rd Cir.2000). A school district is not in the same position as a state or a state agency for eleventh amendment purposes. *Miener,* 673 F.2d at 980. Therefore, Defendant's Motion to Dismiss is denied.

Defendant's Alternative Motion for Summary Judgment is also denied based upon the Court's reasoning in the granting Plaintiff's Motion for Summary Judgment.

**3. Conclusion**

Therefore, the Court grant's Plaintiff's Motion for Summary Judgment. The Court denies Defendant's Motion to Dismiss or in the Alternative Motion for Summary Judgment.

IT IS SO ORDERED.