Richard O'BRIEN, et al., Plaintiffs,

v.

**BOARD OF EDUCATION OF THE DEER PARK UNION FREE SCHOOL DISTRICT Deer Park Public Schools, Defendant.**

**Equal Employment Opportunity Commission, Plaintiff,**

v.

**Deer Park Union Free School District, Defendant.**

**Nos. 94 CV 4695(DRH), 95 CV 0092(DRH).**

United States District Court, E.D. New York.

Jan. 24, 2001.

Prof. Young had a ministerial duty to investigate his own harassment.

Rosen Leff, Hempstead, New York, by Robert M. Rosen, Douglas D. Scherer, Lori Brown, for plaintiffs Richard O'Brien, et al.

Equal Employment Opportunity Commission, New York District Office, New York City, by Elizabeth Grossman, David L. Barkey.

Barry McTiernan & Moore, New York City, by Suzanne M. Halbardier, for Deer Park Union Free School District.

### MEMORANDUM AND ORDER ON RECONSIDERATION

HURLEY, District Judge.

Plaintiffs in this consolidated action claim that a provision of the Defendant Deer Park Union Free School District's collective bargaining agreement that governs sick leave accumulation for the purpose of retirement payment violates, inter alia, the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., as amended by the Older Workers Benefit Protection Act of 1990 (OWBPA), Pub.L. No. 101–433, 104 Stat. 978 (codified at 29 U.S.C. §§ 621, 623), because it reduces the

amount of accumulated sick leave paid to teachers formerly employed by the school district on the basis of their age.

By Memorandum and Order dated March 29, 2000, this Court (1) granted the O'Brien Plaintiffs' motion for summary judgment in Case No. 94–CV–4695 as to liability only; (2) granted the EEOC Plaintiff's motion for summary judgment in Case No. 95–CV–0092 as to liability only; (3) denied the Defendant Deer Park Union Free School District's cross motions for summary judgment in Case Nos. 94–CV–4695 and 95–CV–0092; and (4) denied Defendant Deer Park Union Free School District's cross-motion for leave to amend its Answer in Case No. 95–CV–0092. *O'Brien v. Board of Educ.*, 92 F.Supp.2d 110 (E.D.N.Y.2000). Familiarity with that decision is assumed.

On April 12, 2000, Defendant Deer Park Union Free School District ("Defendant") moved this Court to reconsider its March 29, 2000, decision, arguing (1) that because the Court, in reaching its decision, misinterpreted or misapplied the decision of the United States Court of Appeals for the Seventh Circuit in *Karlen v. City Colleges*, 837 F.2d 314 (7th Cir.1988), the Court should grant the Defendant's motion for reconsideration, and, upon reconsideration, grant Defendant's cross-motions for summary judgment against the O'Brien and EEOC Plaintiffs in Case Nos. 94–CV–4695 and 95–CV–0092; (2) alternatively, to the extent the Court determines that it misinterpreted or misapplied the decisional law in *Karlen* such that Defendant may be able to establish an affirmative defense to Plaintiffs' prima facie showing of age discrimination under 29 U.S.C. § 623(f)(2)(B)(ii), the Court should at least grant Defendant's motion for reconsideration, and, upon reconsideration, grant De-

fendant's cross-motion for leave to amend its Answer in Case No. 95–CV–0092 so as to allow Defendant to establish that defense; and (3) that the recent decisions of the United States Supreme Court in *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the United States Court of Appeals for the Second Circuit in *Butler v. New York State Department of Law*, 211 F.3d 739 (2d Cir. 2000), and the United States District Court for the Eastern District of New York in *Hamad v. Nassau County Medical Center*, No. 98–CV–4320 (E.D.N.Y. Mar. 20, 2000) (slip op.) (Seybert, J.), require the Court to dismiss this action as against Defendant for lack of subject matter jurisdiction on the grounds of Eleventh Amendment immunity.

For the reasons stated by the Court on the record after oral argument on December 22, 2000, the Court denied Defendant's motion to dismiss the action on Eleventh Amendment immunity grounds and reserved decision as to whether it should reconsider its March 29, 2000, Memorandum and Order. For the reasons stated below, the Court now grants Defendant's motion for reconsideration, but, upon reconsideration, adheres to its Memorandum and Order of March 29, 2000.

## I. DISCUSSION

Defendant urges the Court to reconsider the conclusion in its March 29, 2000, Memorandum and Order that the retirement incentive in the case at bar "is virtually identical to the clause at issue in *Karlen*," *O'Brien*, 92 F.Supp.2d at 119, such that Defendant cannot, as a matter of law, establish the affirmative defense of 29 U.S.C. § 623(f)(2)(B)(ii).[1] According to Defendant, unlike the discriminatory clause in

1. This statutory affirmative defense provides, in relevant part, that

[i]t shall not be unlawful for an employer . . .—

. . . .

(2) to take any action . . .—

. . . .

(B) to observe the terms of a bona fide employee benefit plan—

. . . .

(ii) that is a voluntary early retirement incentive plan consistent with the relevant purpose or purposes of [the ADEA].

29 U.S.C. § 623(f)(2)(B)(ii).

*Karlen,* the "step down" provision in the Deer Park retirement incentive does not treat retirees differently solely on the basis of their age. (Def.'s Mem.Law Supp.Mot.Recons. at 4.) Rather, Deer Park retirees of different ages are treated identically, assuming they retire in the same year of eligibility. (*See id.*) Citing the decisions in *Patterson v. Independent School District # 709,* 742 F.2d 465 (8th Cir.1984), and *Cipriano v. Board of Education of North Tonawanda,* 785 F.2d 51 (2d Cir.1986), Defendant maintains that its tapering of the retirement incentive is a valid "carrot." (*Id.*)

The O'Brien and EEOC Plaintiffs counter that Defendant has not met the procedural requirements of a motion to reconsider, because Defendant has not raised any matter or controlling decision that the Court had overlooked and which, had it been considered originally, may have materially influenced its earlier decision. (EEOC's Mem.Law Opp'n at 9–12; O'Brien Pls.' Mem.Law Opp'n at 1–3.) In their submissions on this motion, neither the O'Brien nor the EEOC Plaintiffs affirmatively contend that the Court's comparison of the Deer Park retirement incentive to the clause at issue in *Karlen* was correct. They oppose reconsideration on procedural grounds alone, remaining silent as to the substance of the Court's earlier conclusion.

### A. RECONSIDERATION OF THE COURT'S MEMORANDUM AND ORDER OF MARCH 29, 2000

■ Local Civil Rule 6.3[2] provides, in part, that "[t]here shall be served with the notice of motion for reconsideration or reargument a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked." Because of the strong interest in "preserv[ing] scarce judicial resources and avoid[ing] piecemeal litiga-

tion," *Church of Scientology, Int'l v. Time Warner, Inc.,* No. 92 Civ. 3024, 1997 WL 538912, at *2 (S.D.N.Y. Aug.27, 1997), "Local Rule 6 .3 is 'narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.'" *Thomas v. A.R. Baron & Co.,* 967 F.Supp. 785, 790 (S.D.N.Y.1997) (quoting *Walsh v. McGee,* 918 F.Supp. 107, 110 (S.D.N.Y.1996)); *accord Gray v. Briggs,* No. 97 Civ. 6252, 1998 WL 635545, at *1 (S.D.N.Y. Sept.16, 1998). Conversely, "a party in its motion for reargument 'may not advance new facts, issues or arguments not previously presented to the court.'" *American Alliance Ins. Co. v. Eagle Ins. Co.,* 163 F.R.D. 211, 213 (S.D.N.Y.1995), *rev'd on other grounds,* 92 F.3d 57 (2d Cir.1996).

■ In faithfulness to the foregoing, "[t]he court must not allow reargument ... to permit a party to reargue those issues already considered merely because a party does not like the outcome." *Thomas,* 967 F.Supp. at 790. Rather, "the movant must direct [the] court to 'controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *United States v. Various Articles of Obscene Merchandise,* No. 95 Civ. 0583, 1996 WL 532342, at *1 (E.D.N.Y. Sept.16, 1996) (quoting *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir.1995)).

Although the O'Brien and EEOC Plaintiffs persuasively demonstrate that Defendant had previously addressed the *Karlen* decision in its original and reply briefs on its cross-motion for summary judgment, (*see* Def.'s Mem.Law Supp. Cross–Mot. Summ.J. at 12–13; Def.'s Reply Mem.Law Supp. Cross–Mot.Summ.J. at 4–5), such that the import of that decision had been

---

2. Pursuant to a recodification of the local rules, which was approved by Order of the Boards of Judges of the United States District Courts for the Southern and Eastern Districts of New York on April 15, 1997, Local Rule 6.3 replaced former Rule 3(j). As no substantive changes were made thereto, case law interpreting Rule 3(j) is applicable in the instant case.

fully briefed before the issuance of the Court's Memorandum and Order of March 29, 2000, Defendant's motion for reconsideration is not procedurally defective.

■ Because Defendant's motion is narrowly focused on the question of whether this Court misinterpreted or misapplied the decision in *Karlen*, it neither advances repetitive arguments, nor improperly attempts to introduce, in tardy fashion, new facts, issues or arguments that Defendant had a previous opportunity to present to the Court. Because the Court's misapplication or misinterpretation of a case upon which it relied significantly in rendering its previous decision, if true, is a matter that might reasonably be expected to alter the conclusion reached in that decision, Defendant's motion for reconsideration is procedurally sound and is granted.

However, for the reasons that follow, the Court adheres to its conclusion that the Deer Park retirement incentive is virtually identical to that in *Karlen*, regardless of certain factual distinctions between the two. Further, the Court holds that early retirement incentive plan "window" benefit features that reduce retirement benefits during the period of the open window are inconsistent with the purpose of the ADEA to prohibit arbitrary age discrimination in employment.

### B. THE DEER PARK RETIREMENT INCENTIVE IS VIRTUALLY IDENTICAL TO THAT IN KARLEN

The Court adheres to the conclusion reached in its original opinion that the Deer Park retirement incentive is virtually identical to that in *Karlen*. Defendant's argument to the contrary misappreciates the context in which the Court reached that conclusion.

It is true, when comparing the retirement incentive in the case at bar to the clause at issue in *Karlen*, that the two Early Retirement Incentive Programs ("ERIPs") are not identical. As explained

in the Court's March 29, 2000, Memorandum and Order, the *Karlen* program

> "offered retirees a lump sum payment based upon a variable percentage of their accumulated sick pay, depending upon their age at the time of retirement. This percentage rose from 50 percent at age 55 to 80 percent at age 64, but fell to 45 percent after age 64."

*O'Brien*, 92 F.Supp.2d at 119 (quoting *Auerbach v. Board of Educ.*, 136 F.3d 104, 114 (2d Cir.1998)).

By contrast, Section 10(g) of the collective bargaining agreement at issue in this case provides, in pertinent part, as follows:

> Effective July 1, 1988, teachers who retire in their first school year of eligibility shall be compensated for 100% of their accumulated sick leave....
>
> Teachers who retire in their second school year of eligibility shall be compensated for 80% of their accumulated sick leave....
>
> Teachers who retire in their third school year of eligibility shall be compensated for 75% of their accumulated sick leave....
>
> Teachers who retire in their fourth school year of eligibility shall be compensated for 70% of their accumulated sick leave....
>
> Eligibility shall be defined as having attained at least 55 years of age with at least 10 years of retirement credit in the New York State Teachers Association Retirement System. All teachers who have become eligible for retirement prior to July 1, 1988 shall be considered in their first year of eligibility as of the 1988–89 school year.

*O'Brien*, 92 F.Supp.2d at 111.

A comparison of the two ERIPs demonstrates that Defendant is accurate when it draws the following distinction:

> [Under the Deer Park ERIP,] a 59–year–old teacher was treated the same as a 65–year–old teacher, *assuming both*

*retired in the same year of eligibility.*[3] Quite differently, the *Karlen* clause treated these two ages differently, for no reason other than their age: a 59–year–old teacher under the *Karlen* clause would receive 60 percent [of his or her accumulated sick pay], while a 65 year old would receive 45 percent.

(Def.'s Mem.Law Supp.Mot.Recons. at 4 (emphasis added).)

However, the distinction drawn by Defendant is a distinction without a difference. The school district fails to acknowledge that this Court, in describing the two ERIPs as "virtually identical," did so by reference to the Second Circuit's decision in *Auerbach v. Board of Education,* 136 F.3d 104 (2d Cir.1998), a portion of which the Court quoted in its Memorandum and Order of March 29, 2000. In *Auerbach,* the Second Circuit described the harm of the *Karlen* ERIP in the following two paragraphs:

> The *Karlen* plan arbitrarily discriminated on the basis of age among those within the group eligible for early retirement benefits. The incentives gradually increased between the ages of 55 and 64, but dropped off precipitously for those participants who retired after age 64. *As a result, some plan participants received greater incentives than others solely because they retired at a more optimal age under the plan.* The employer offered no other reason than age for this downward sliding scale of incentive benefits.
>
> *An early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older workers conflicts*

with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment. The terms of a plan cannot discriminate among participants on the basis of age.

*Auerbach,* 136 F.3d at 114 (citations omitted) (emphasis added). The latter paragraph was quoted and italicized for emphasis in this Court's Memorandum and Opinion of March 29, 2000. *See O'Brien,* 92 F.Supp.2d at 119 (quoting *Auerbach,* 136 F.3d at 114).

Therefore, this Court's conclusion that the ERIP at bar and the ERIP in *Karlen* were "virtually identical" must be understood in context—not so much as an identity-in-fact by a comparison to the facts of *Karlen,* but as an identity-in-legal-effect by a comparison to *Auerbach's* analysis of *Karlen.* That is to say, this Court found the Deer Park ERIP to be arbitrarily discriminatory as a matter of law for the same reason the Second Circuit identified the *Karlen* ERIP as arbitrarily discriminatory. As in *Karlen,* the Deer Park ERIP *offers some of its participants greater incentives than others solely because they retire at a more optimal age under the plan.* As in *Karlen,* the Deer Park ERIP *reduces benefits to older retiree plan participants while continuing to make them available to younger retiree plan participants.* Therefore, as in *Karlen,* as that case was analyzed in *Auerbach,* the Deer Park ERIP *encourages premature departure from employment by older workers in conflict with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment.*

Finally, although Defendant seizes upon the "virtually identical" language of this Court's March 29, 2000, Memorandum and Opinion, it ignores the remainder of the

**3.** Since two teachers with the same number of years of retirement credit could retire at different ages and receive different benefits under the Deer Park ERIP, Defendant's argument that the plans' incentive amounts are tied to retirement *eligibility* rather than *age* does not affect the Court's conclusion that the

Deer Park ERIP is arbitrarily discriminatory. *See* discussion *infra* Part I.C (quoting *EEOC v. Hickman Mills Consol. Sch. Dist. No. 1,* 99 F.Supp.2d 1070 (W.D.Mo.2000), and finding the holding therein applicable to the facts of this case).

sentence in which that language appears. The full sentence reads: "Thus, Section 10(g) is virtually identical to the clause at issue in *Karlen in that both provisions provided for diminished benefits as the age of the participants increased.*" *O'Brien,* 92 F.Supp.2d at 119 (emphasis added). By ignoring the latter portion of that sentence, the Defendant effectively ignored the context of the Court's comparison.

### C. THE FACTUAL DIFFERENCES BETWEEN THE KARLEN *ERIP* AND THE DEER PARK *ERIP* DO NOT ALTER THE COURT'S CONCLUSION THAT THE LATTER IS ARBITRARILY DISCRIMINATORY

Even when the Court considers the factual differences between the Deer Park ERIP and the *Karlen* ERIP, those factual differences do not change the result in this case. The significant factual differences between the Deer Park ERIP and the *Karlen* ERIP appear to be of two kinds. First, the Deer Park ERIP has a more linear reduction in retiree benefits (i.e., reduction from 100% to 80% to 75% to 70% in the first, second, third, and fourth years of eligibility, respectively), while the *Karlen* ERIP had a "spike-and-fall" reduction in retiree benefits (i.e., spike in benefits from 50 percent at age 55 to 80 percent at age 64, but drop in benefits to 45 percent after age 64). Second, the Deer Park ERIP incorporates age as an element of benefit eligibility (i.e., eligibility for ERIP benefits commences when the participant has attained 55 years of age with at least 10 years of retirement credit), while the *Karlen* ERIP tied a participant's benefit level explicitly to his or her age.

Presumably, it is the Defendant's contention that the linear reduction is less arbitrary than the "spike and fall" reduction, and that the incorporation of age as a component of benefit eligibility is less arbitrary than tying benefit eligibility directly to age. During oral argument on December 22, 2000, counsel for Defendant emphasized these two factual differences between the Deer Park ERIP and the *Karlen* ERIP in urging that the Deer Park ERIP was not arbitrarily discriminatory.

Following *Auerbach,* neither factual distinction identified by counsel leads to a different outcome. The foregoing two distinctions were present in the case of *EEOC v. Hickman Mills Consolidated School District No. 1,* 99 F.Supp.2d 1070 (W.D.Mo.2000), decided May 24, 2000, in which the United States District Court for the Western District of Missouri followed the reasoning in *Auerbach* in rejecting a school district's contention that its ERIPs from 1992 to 1996 were not arbitrarily discriminatory. In *Hickman Mills,* as here, the plans' incentive amounts were not tied directly to the age of the employee but rather to retirement eligibility, which contained both age and years-of-service components. *Id.* at 1073. In *Hickman Mills,* as here, the plans' incentive amounts dropped in a more linear fashion, from 50% benefits in the first year of eligibility, to 40% in the second year of eligibility, and so on, dropping 10% each year. *Id.*

The school district in that case argued that its 1992–1996 ERIPs were not arbitrarily discriminatory "because the plans' incentive amounts were not tied to the age of the employee but rather to ... retirement eligibility." *Id.* at 1077. The district court, quoting the same paragraph from *Auerbach* that this Court italicized for emphasis in its Memorandum and Order of March 29, 2000, rejected the school district's analytical distinction between age and years of service:

> [T]he Court declines to follow this line of reasoning for the simple fact that in Defendant's plans, two people could have the same years of credited service, be eligible for unreduced retirement, but retire at different ages and receive different benefits. For example, consider two employees under the 1996 classified ERIP. If one employee had thirty years of service and retired at the age of forty-

eight, the individual would receive the maximum amount of the ERIP.... However, if an employee was 61 years old with thirty years of service, their [sic] early retirement incentive benefit would be reduced from the maximum amount ... to 20%....

The United States Court of Appeals for the Second Circuit states that such a plan is not legal:

> "An early retirement incentive plan that withholds or reduces benefits to older retiree plan participants, while continuing to make them available to younger retiree plan participants so as to encourage premature departure from employment by older workers conflicts with the ADEA's stated purpose to prohibit arbitrary age discrimination in employment."

An employer cannot discriminate against employees based upon age.

*Hickman Mills,* 99 F.Supp.2d at 1078–79 (citations omitted) (quoting *Auerbach,* 136 F.3d at 114).

The analysis in *Hickman Mills* applies with equal force to the Deer Park ERIP. Although Defendant is correct that the Deer Park ERIP treats retirees identically, assuming they retire in the same year of plan eligibility, neither the incorporation of years of retirement credit as a component of eligibility, nor the comparatively linear reduction in benefits, ameliorates the arbitrarily discriminatory nature of the Deer Park ERIP. In *Hickman Mills,* as here, the district court denied the school district's alternative motion to amend its answer to establish a § 623(f)(2)(B)(ii) defense, finding that such amendment "clearly would not succeed on the merits." *Id.* at 1079.

**D. AN ERIP "WINDOW" BENEFIT PLAN THAT REDUCES RETIREE BENEFITS DURING THE PERIOD OF THE OPEN WINDOW IS INCONSISTENT WITH THE PURPOSE OF THE ADEA TO PROHIBIT ARBITRARY AGE DISCRIMINATION**

■ At oral argument on Defendant's motion for reconsideration, counsel for Defendant and for Plaintiff EEOC each characterized the Deer Park ERIP as a "window" plan. In *Auerbach,* the Second Circuit, examining the legislative history of the Older Workers Benefit Protection Act, explained that both Houses of Congress

> endorsed plans containing a time-related window during which employees, upon attaining a specified age, are offered for a limited period of time a special incentive to retire. Those special incentives may include both flat dollar amounts and service-based benefits (i.e., accumulated sick pay).

*Auerbach,* 136 F.3d at 113 (citations to legislative history omitted). The Second Circuit found that the Harborfields Central School District ERIP window benefit at issue, which required plan participants to retire at the conclusion of the school year in which they first satisfied both age and years-of-credited-service criteria in order to receive the plan's incentive benefits, was consistent with the stated purposes of the ADEA:

> The retirement plan in the case at hand is precisely the sort of early retirement incentive plan that Congress aimed to preserve as lawful when it passed the Older Workers' Protection Act. The plan grants *every* teacher the opportunity to receive a $12,500 cash payment and an accumulated sick leave payment once he or she reaches the age of 55 and has served the requisite number of years. Teachers who decline to participate in the plan and receive its benefits continue to work as valued employees in the School District without any corresponding loss of benefits or job status.

*Id.* (citations to legislative history omitted).

At oral argument, counsel for Defendant compared the Deer Park window benefit plan to the window benefit plan at issue in *Auerbach.* Counsel for Plaintiff EEOC, on the other hand, contrasted the two plans.

The salient point elicited from this exchange was that, unlike the window benefit plan at issue in *Auerbach,* retirement benefits under the Deer Park window benefit plan drop during each year its "window" remains "open." That is to say, under the Deer Park ERIP: (1) at the beginning of the first year of retirement eligibility, the window opens, and those who elect to retire during the first year of the open window are compensated at 100% of accumulated sick leave; (2) those who elect to retire during the second year of the open window are compensated at 80%; (3) during the third year, 75%; and (4) finally, at the end of the third year of retirement eligibility, the window closes, and those who retire thereafter are compensated at 70% of accumulated sick leave.

Accordingly, the dispositive question presented for the purpose of this motion is as follows: Is an early retirement incentive window benefit plan that diminishes retirement benefits during the period of the open window consistent with the stated purpose of the ADEA to prohibit arbitrary age discrimination in employment? The Court answers that question in the negative. In the Court's judgment, ERIP "window" features that reduce the value of the retirement benefit as the putative retiree ages are impermissible.[4]

Post–*Auerbach,* there should be little doubt, at least in this Circuit, that an ERIP window benefit plan that reduces retirement benefits during the period of the open window cannot be squared with the ADEA's purposes. Although the ERIP window benefit at issue in *Auerbach* did not reduce retirement benefits during the period of the open window, that very fact appears to have been important to the

Second Circuit's decision that the Harborfields Central School District ERIP window benefit was consistent with the purposes of the ADEA:

> By offering the same incentives (subject to variations in accumulated sick days) to all plan participants who reach the age of 55, it treats those participants equally, *regardless of the actual age at which they retire.* It is true that some older retirees who do not participate in the plan will not receive its benefits. However, their loss of plan benefits is due to their election to refrain from exercising their early retirement option during the relevant window of opportunity (which was the same length of time for all eligible employees), *and not because they participated in the plan yet retired at a later age.* Consequently, the subject retirement incentive plan does not arbitrarily discriminate on the basis of age among early retirees who choose this option *because it does not diminish benefits as the age of its participants increases.* It therefore satisfies the overriding purpose of the ADEA that a plan not discriminate on account of an employee's age.

*Id.* at 114 (emphasis added).

Unlike the window benefit plan challenged in *Auerbach,* a window benefit plan that reduces retirement benefits during the period of the open window necessarily diminishes the level of benefits to which a participant is entitled as the age of the participant increases. Under the Deer Park ERIP, for example, two teachers who share the same date of birth, who enjoy the same number of years of retirement credit, whose windows "open" on the same

---

**4.** The question the Court decides today is one of first impression, at least in this Circuit, though practitioners have been waiting since passage of the Older Workers Benefit Protection Act for it to be resolved. *See* Rebecca S. Stith & William A. Kohlburn, *Early Retirement Incentive Plans After Passage of the Older Workers Benefit Protection Act,* 11 St. Louis U.Pub.L.Rev. 263, 276–78 (1992) (observing that the OWBPA "calls ... into question"

window benefit plans that diminish benefits during the election period; assessing an employer's risk of exposure to liability under such a plan; determining that the risk "can be reduced, but by no means eliminated, by using years of service rather than age to determine the reduction/termination dates"; but concluding that such a plan "is inadvisable at this time, largely due to the uncertain state" of the law).

date (their fifty-fifth birthday), and who both elect to participate in the ERIP, will receive different retirement benefits if they retire at different ages. The teacher who retires at age 55 will be compensated at 100% of her accumulated sick leave, while the teacher who retires at age 57 will only receive 75% of her accumulated sick leave. This reduction in retirement benefits for the older worker in order to induce her to retire is precisely the form of discrimination at which the ADEA is aimed. Accordingly, the Court again determines that Defendant cannot, as a matter of law, establish the affirmative defense of 29 U.S.C. § 623(f)(2)(B)(ii).

### E. The Patterson and Cipriano Decisions Do Not Alter the Court's Conclusion

Citing the pre-OWBPA decisions in *Patterson v. Independent School District # 709*, 742 F.2d 465 (8th Cir.1984), and *Cipriano v. Board of Education of North Tonawanda*, 785 F.2d 51 (2d Cir.1986), Defendant argues that its tapering of the retirement incentive is a valid "carrot."[5] In *Patterson*, the United States Court of Appeals for the Eighth Circuit upheld a voluntary ERIP window benefit plan that allowed teachers eligible for retirement at age 55 to receive $10,000 if they retired in their first year of eligibility, but diminished that "carrot" by $500 for each year over age 55 until age 60, and by $1500 for each year over 60, calling the diminishment of plan benefits within the window period "manifestly appropriate" in order "to effect the purpose of encouraging early retirement." 742 F.2d at 467–69.

The basis for the court's decision was that the ERIP at issue in that case was "a bona fide employee benefit plan" in conformity with 29 U.S.C. § 623(f)(2) as it then existed, which provided, in relevant part:

> It shall not be unlawful for an employer ... to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of [the ADEA].

*Id.* at 466.

In *Cipriano*, the United States Court of Appeals for the Second Circuit addressed a school district's ERIP that offered lump sum retirement incentives to teachers between the ages of 55 and 60 with 20 years of service under the New York State Teachers Retirement System who retired during a specified window period. 785 F.2d at 52 & n. 1. Unlike *Patterson*, the window benefit plan at issue in *Cipriano* did not reduce retirement benefits during the period of the open window. Like *Patterson*, however, the panel held that the ERIP at issue was "a bona fide employee benefit plan" within the meaning of § 623(f)(2). *Id.* at 54–56.

Significantly, neither *Patterson* nor *Cipriano* decided whether the window benefit plans at issue were "subterfuges" designed to "evade the purposes" of the ADEA. In *Patterson*, the plaintiff never contended that the ERIP constituted a subterfuge.[6] 742 F.2d at 466. In *Cipriano*,

**5.** Because it may make no difference to the analysis whether the Deer Park retirement incentive constitutes "the withdrawal of a 'carrot' rather than the sting of a 'stick,'" *Solon v. Gary Cmty. Sch. Corp.*, 180 F.3d 844, 852–53 (7th Cir.1999), the Court does not attach particular significance to either label, noting only that the "carrot" characterization necessarily proceeds on the understanding that the Deer Park ERIP was negotiated to limit compensation for accumulated sick pay to a 70% baseline, with the 100% payout in the first year of eligibility, declining thereafter to 70%, as a "bonus" over and above that

baseline. (*See* Def.'s Mem.Law Supp. Cross–Mot.Summ.J. at 9–10); *see also* Peter N. Swan, *Early Retirement Incentives with Upper Age Limits under the Older Workers Benefits Protection Act*, 19 J.C. & U.L. 53, 61–62 (1992) (describing difference between "carrot" and "stick" approaches to early retirement incentive plans).

**6.** Moreover, the *Patterson* decision could be interpreted to subsume the "subterfuge" question into either (1) the question of whether the plan was "a bona fide retirement plan," or (2) the question of whether the plan was "volun-

the Second Circuit reversed the decision of the United States District Court for the Western District of New York on the grounds that the district court had impermissibly read the subterfuge clause out of the statute in granting summary judgment in favor of the school board, and directed the court to determine, on remand, whether the school board had met its burden of demonstrating that the retirement plan was not a subterfuge to evade the purposes of the ADEA. 785 F.2d at 57–58.

Because the decisions in *Patterson* and *Cipriano* never squarely address whether the window benefit plans at issue are "subterfuge[s] to evade the purposes of [the ADEA]" within the pre-OWBPA meaning of § 623(f)(2), the bearing of those cases on the issue of whether a window benefit plan is "consistent with the relevant purpose or purposes of [the ADEA]" within the current meaning of § 623(f)(2)(B)(ii) is doubtful, even prescinding from the question of whether the pre-OWBPA language in § 623(f)(2) is sufficiently similar to the current language to lend continuing significance to these pre-OWBPA cases.[7]

Furthermore, to the extent *Patterson* could be urged as authority for the proposition that the Deer Park ERIP window benefit constitutes a valid "carrot," the Court expressly declines to follow that decision, as well as its dictum that diminishing benefits within a window period are "manifestly appropriate." In the Court's judgment, *Patterson* can no longer be reconciled with controlling authority in this Circuit. *See Auerbach*, 136 F.3d at 113–14.

With respect to *Cipriano*, although the Court is aware of a Second Circuit decision describing *Cipriano*'s analysis as "viable

despite the OWBPA's amendments to the ADEA," *Raskin v. Wyatt Co.*, 125 F.3d 55, 61 n. 2 (2d Cir.1997), nothing in that decision, which pre-dates *Auerbach*, suggests that *Cipriano* is authoritative on the point for which Defendant cites it, i.e., that the tapering of a retirement incentive is valid. Moreover, it is hard to see how *Cipriano* could support that point, since the case did not involve a tapered incentive.

It is true that in *Cipriano*, the Second Circuit did use the following language in explaining why a retirement incentive did *not* need to be tapered in order to be a bona fide employee benefit plan:

> For the purpose of determining whether a plan is a "bona fide employee benefit plan" within the meaning of [29 U.S.C. § 623(f)(2) ], it is immaterial that a more nicely tailored plan would have provided ... for a bonus starting at higher than $10,000 and gradually tapering off, with perhaps some small amounts continuing beyond [age] 60. The way the plan is structured affects only whether it might be a subterfuge to evade the purposes of the [ADEA], not whether it qualifies generically for the shelter of [§ 623(f)(2) ].

785 F.2d at 55.

Although the foregoing language of *Cipriano* could be read to suggest that a plan incorporating a tapered benefit is unlikely to be considered a subterfuge to evade the purposes of the ADEA, that interpretation is not compelled, is not tantamount to the conclusion that a tapered benefit is valid under the ADEA as amended, and does not take into account the decision reached by the district court on remand. *See Cipriano v. Board of Educ. of N. Tonawanda*, 700 F.Supp. 1199

tary." *See* 742 F.2d at 467 ¶ 5. *Cipriano* expressly disapproved of either approach as going "so far as to practically to read the subterfuge clause out of the statute." 785 F.2d at 57–58.

7. The continuing relevance of *Karlen*, on the other hand, is secured by Congress' approval of that decision in the legislative history to the

OWBPA, *see* S.Rep. No. 101–263, at 27 (1990), *reprinted in* 1990 U.S.C.C.A.N. 1509, 1533, and by the Second Circuit's reliance on it in *Auerbach*, 136 F.3d at 113–14. The same is true of *Cipriano II*, discussed *infra*. *See* S.Rep. No. 101–263, at 28, *reprinted in* 1990 U.S.C.C.A.N. at 1533; *Auerbach*, 136 F.3d at 114.

(W.D.N.Y.1988) [hereinafter *Cipriano II*], *vacated on other grounds,* 772 F.Supp. 1346 (W.D.N.Y.1991), *aff'd,* 968 F.2d 1502 (2d Cir.1992).

In *Cipriano II,* the district court undertook to determine whether the defendant school board had met its burden of proving that the ERIP at issue was not a subterfuge to avoid the purposes of the ADEA, *id.* at 1205, as guided by *Cipriano's* holding that, to establish this defense, an employer " 'must come up with some evidence ... showing a legitimate business reason for structuring the plan as it did.' " *Id.* at 1207 (quoting *Cipriano,* 785 F.2d at 58). The plaintiff school teachers, citing *Karlen,* argued that there could be no rational business justification for excluding teachers over age 60 from the plan, and that the school board could not demonstrate any correlation between age and cost of the plan so as to shelter in the safe harbor of § 623(f)(2). *Id.* at 1202.

In response, the defendant school board took the position that, since the window benefit plan at issue

provided retirement incentive[s] only to those employees between the ages of 55–60, *and no incentive (as opposed to a lesser incentive) was offered to those over the age of 60,* the plan did not run afoul of the major purpose of the ADEA, which is to discourage the removal of older persons from the workforce.[8]

*Id.* at 1203 (emphasis added). In declining to follow *Karlen's* "equal benefit or equal cost" rule in favor of the "legitimate business reason" rule of *Cipriano,* the Court in *Cipriano II* distinguished *Karlen* on the facts:

[S]imply stated, the plan in *Karlen* discriminated against those within the group eligible for early retirement but over age 65, while the plan in the instant case offers the same incentive to all employees ... who reach the age of 55.

*Id.* at 1210 (emphasis added).

In short, Defendant's position that it is valid to reduce a retirement incentive within the period of the "open window" is at odds not only with the reasoning of the court in *Cipriano II,* but with the position taken by the defendant school board in that case.[9] Both the court and the school

8. Arguably, the position the school board takes in *Cipriano II* is consistent with Defendant's position. This argument proceeds on the understanding that the Deer Park ERIP was negotiated to limit compensation for accumulated sick pay to a 70% baseline, with the 100% payout in the first year of eligibility, declining thereafter to 70%, as a "bonus" over and above that baseline. *See* discussion *supra* note 5. According to the logic of this argument, the closure of the window at the end of the third year of window eligibility means that those who retire thereafter, with 70% compensation, receive *no* retirement incentive (as opposed to a *"lesser* incentive").

Although the Court accepts the characterization that a retiree receiving 70% compensation for accumulated sick pay receives no retirement incentive under the Deer Park ERIP, the Court rejects the notion that the position of the school board in *Cipriano II* and the Defendant in this case are consistent. It cannot seriously be disputed that the kind of ERIP against which the school board in *Cipriano II* was contrasting its own ERIP is the kind at issue in this case. If, for example, the school board in *Cipriano II* had employed

a reduced retirement incentive for employees over age 60, that reduced benefit must either have continued ad infinitum (in which case, according to the logic of the preceding paragraph, that lesser amount was not really a *"lesser* incentive," but *no* incentive, i.e., a "baseline"), or diminished to zero at some future scheduled terminus (in which case the benefits from age 60 to that terminal date are properly called a "lesser incentive," with the window benefit "lessening" at age 60, and then "closing" as of the terminal date). Because the *Cipriano II* ERIP logically belongs to the former classification (i.e., an all-or-nothing window incentive), but the Deer Park ERIP logically belongs to the latter (i.e., an all-*or-less*-or-nothing window incentive), the position taken by Defendant is logically inconsistent with the position taken by the school board defendant in *Cipriano II.*

9. The Court does not suggest that Defendant should be saddled with the legal position taken by another defendant in a similar case. Defendant's refusal to wear that saddle, however, casts doubt as to whether the similar case, upon which it urges the Court's reliance, is helpful to Defendant's position here.

**354**

district in *Cipriano II* acknowledged, even under the pre-OWBPA regime, that what steered the ERIP clear from the shoals of *Karlen*, and into the safe harbor of § 623(f)(2), was, in significant part, the fact that the ERIP did not discriminate against workers eligible for window benefits by offering reduced incentives to the older workers within that group. At least in that respect, the pre-OWBPA decision in *Cipriano II* is factually and substantively aligned with the post-OWBPA decision in *Auerbach.*

Finally, there is the question of whether *Cipriano* has continuing significance after passage of the OWBPA amendments. Suffice to say that *Cipriano*'s "legitimate business reason" rule, under which an employer meets its burden of demonstrating that a voluntary retirement plan is not a subterfuge to evade the purposes of the ADEA by demonstrating a "legitimate business reason for structuring the plan as it did," is dead. Not only was the "subterfuge" language stricken by the OWBPA, but *Auerbach* makes clear that the question of whether an ERIP is consistent with the purposes of the ADEA now depends on whether it is voluntary, is made available for a reasonable period of time, and—crucial here—does not arbitrarily discriminate on the basis of age. 136 F.3d at 112–13. Because Defendant's ERIP arbitrarily discriminates on the basis of age, any asserted legitimate business reason for tapering the "carrot" will not allow Defendant to escape liability.

## II. CONCLUSION

For the reasons stated *supra* Part 1.A, the Court GRANTS Defendant Deer Park Union Free School District's motion for reconsideration; the Court, upon reconsideration, adheres to the Conclusion it reached in its Memorandum and Order of March 29, 2000; and IT IS FURTHER ORDERED that to the extent the Court's discussion *supra* Parts I.B–I.E may be necessary to that Conclusion, the Court's

Memorandum and Order of March 29, 2000, is so CLARIFIED.

**SO ORDERED.**