THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v THOMAS MORRIS, Respondent.

First Department, October 3, 1977

*Henry J. Steinglass* of counsel *(Peter L. Zimroth* and *Robert M. Pitler* with him on the brief; *Robert M. Morgenthau, District Attorney),* for appellant.

*Stuart Serota* for respondent.

*Per Curiam.* The facts are that in February, 1974, defendant, a police officer, swore in a felony complaint that on February 23, 1974, he found in one William Benjamin's possession a loaded gun and cocaine. On March 4 at a preliminary hearing and before a Grand Jury on March 11, he testified that he entered Benjamin's premises, saw him with a gun, arrested him, searched him and found cocaine. On March 27, 1974 he told an Assistant District Attorney that he had not searched Benjamin or found cocaine.

On March 29, represented by a Patrolmen's Benevolent Association (P.B.A.) attorney, defendant testified before a Grand Jury that he had not searched the man and found cocaine on him. He did say that he had taken a gun from the man. In August the police conducted what is known as G.O. 15 administrative interviews at which officers involved in the arrest were represented by still another P.B.A. attorney. An officer (Tinger) testified that he had found the gun, but had "transferred" the arrest to defendant. On September 27 and 30, 1974, defendant, accompanied by counsel, made statements at the District Attorney's office which caused the indictment to be filed. It is these statements which were suppressed.

At the September 27 meeting, Assistant District Attorney Murphy, who knew of the G.O. 15 proceedings, gave defendant the *Miranda* warnings even though he was not in custody. Defendant stated that on February 23, he entered Benjamin's premises, saw him with a gun, took the gun and arrested him. Other police searched him, and at the police precinct gave Morris a packet, saying it contained narcotics and was found in Benjamin's sock. The Assistant District Attorney revealed that at G.O. 15 interviews another officer admitted he had found Benjamin in possession of a gun and had arrested him. Morris' P.B.A. counsel asked for adjournment so that he could learn from P.B.A. files if officers had given statements incriminating Morris and whether he, by representing Morris, was involved in a conflict of interest. Parenthetically, the Assistant District Attorney allegedly did not know who represented

the officer at the G.O. 15 proceedings but assumed that it was a P.B.A. lawyer. Morris' counsel checked the P.B.A. filing system and failed to find any reference to Tinger's G.O. 15 statement. He also conferred with his supervisor who agreed that no conflict of interest arose through counsel's representation of Morris.

On September 30 in Assistant District Attorney Barrett's office, counsel advised that, there being no conflict of interest, he would continue to represent Morris. At this point Morris stated that he and Officer Bolton had gone to the site of Benjamin's residence but had not entered the premises. He saw several police leave the premises with an arrested person, enter a police car and leave. At the precinct he was offered the arrest and accepted. An officer handed Morris a gun which Officer Tinger said had been found in Benjamin's premises. With similar information, Morris was given the narcotics. Morris admitted he had seen neither gun nor narcotics in Benjamin's possession. He prepared the papers relating to the arrest and testified at the preliminary hearing and before the Grand Jury. Assistant District Attorney Barrett repeated the *Miranda* warnings. Then Morris admitted that his statements in the felony complaint, at the preliminary hearing and before the Grand Jury (concerning discovery of a gun in Benjamin's possession) were perjurious. After the meeting, counsel for Morris discovered that his P.B.A. associate had represented Officer Tinger, who had incriminated Morris in his G.O. 15 interview, and accordingly, he withdrew as defendant's counsel.

The trial court concluded that the September 27 and 30 meetings were criminal investigations conducted by Assistant District Attorneys who knew that Morris' counsel was involved in a conflict of interest between Morris and the officers who made G.O. 15 statements. Further, that the Assistant District Attorneys did not inquire of, or inform Morris and his counsel of the conflict; that on September 27, Assistant District Attorney Murphy alerted counsel to the possible conflict, but counsel did not confirm the conflict until after the September 30 statement of Morris. The trial court, thereupon, predicated its decision on *Miranda* principles and the theory that Morris' right to counsel was impaired by the People who permitted him to select his counsel without putting him on notice of the conflict known to the People.

*Miranda* is not applicable to a noncustodial interrogation,

and the September 27 and 30 interviews were clearly noncustodial. (See *People v Huffman,* 41 NY2d 29.)

Morris' selection of counsel was knowingly and fully done without influence of the People. The risk of impairment of his right to counsel did not arise until the August 1974 G.O. 15 interview, and the People did not originate the risk, but rather it arose through the conduct of counsel and his associate or through the internal administration of the P.B.A. legal staff.

Due process does not require that prior to arrest or accusation of a defendant, the People advise the subject of an investigation that his attorney is or may be involved in a conflict of interest (cf. *United States v Russell,* 411 US 423). Morris was not in custody nor had he been accused of a crime; the interview was not a custodial interrogation and the right to effective assistance of counsel did not really attach. The Supreme Court held in *Kirby v Illinois* (406 US 682, 688) that the Sixth Amendment right to counsel attaches "only at or after the time that adversary judicial proceedings have been initiated". As examples, the court offered at page 689 "formal charge, preliminary hearing, indictment, information, or arraignment." And unless the interview with the Assistant District Attorneys can fairly be interpreted as within the ambit of the examples given, the right to counsel does not attach. When interviewing a person under investigation, who has no statutory right to effective assistance of counsel, the duty should not devolve upon the People to put him on notice of possible conflicts of interest. This is a function best left to the attorney because "Attorneys are under an ethical obligation to disclose to their clients, at the earliest possible time, any conflicting interests that might cloud their representation." *(People v Gomberg,* 38 NY2d 307, 314.) The fact that counsel did not ascertain a conflict cannot serve to place an additional duty upon the prosecution.

Accordingly, the order of the Supreme Court, New York County (M. EVANS, J.), dated August 3, 1976, suppressing certain statements made by defendant, which the People had intended to use at the trial of the defendant, upon an indictment alleging perjury in the first degree; offering a false instrument for filing in the first degree and official misconduct should be reversed, on the law and the facts, and the motion to suppress denied.

SILVERMAN, J. P., EVANS, CAPOZZOLI and LYNCH, JJ., concur.

Order, Supreme Court, New York County, entered on August 3, 1976, unanimously reversed, on the law and the facts, and the motion to suppress denied.