UNITED STATES of America,

v.

RW PROFESSIONAL LEASING SERVICES CORP., also known as "Professional Leasing Services," Rochelle Besser, also known as "Rochelle Drayer," Barry Drayer, Roger Drayer, Adam Drayer, Susan Cottrell, Myrna Katz, and Stephen Barker, Defendants.

No. 02 CR 767(ADS)(MLO).

United States District Court, E.D. New York.

Aug. 5, 2004.

Roslynn R. Mauskopf, United States Attorney by Geoffrey R. Kaiser, Assistant U.S. Attorney, Central Islip, NY, for U.S.

Frankel & Abrams by Stuart E. Abrams, Esq., New York City, for Defendant RW Professional Leasing Services Corp.

Simon & Partners LLP by Bradley D. Simon, Esq., Kenneth C. Murphy, Esq., New York City, for Defendant Rochelle Besser.

Stephen L. Cohen, Esq., Chatham, NY, for Defendant Barry Drayer.

Jerald Rosenthal, Esq., Ghent, NY, for Defendant Roger Drayer.

Grossman & Rinaldo by Paul J. Rinaldo, Esq., Kew Gardens, NY, for Defendant Adam Drayer.

Gotlin & Jaffe by Daniel Gotlin, Esq., New York City, for Defendant Susan Cottrell.

John S. Wallenstein, Esq., Mineola, NY, for Defendant Myrna Katz.

Terrence P. Buckley, Esq., Islandia, NY, for Defendant Stephen Barker.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

This case involves charges of conspiracy to commit bank fraud, wire fraud and money laundering. Presently before the Court are the following motions: (1) a motion by the defendant Myrna Katz ("Katz") to suppress certain statements; (2) Katz's motion for severance of her case and a separate trial pursuant to Rule 14 of the Federal Rules of Criminal Procedure ("Fed. R.Crim.P"); and (3) a motion by the defendant RW Professional Leasing Services, Inc. ("PLS") for reconsideration of the Court's Memorandum of Decision and Order dated May 4, 2004.

## I. BACKGROUND

The background of this case is incorporated in the Court's memorandum of decision and order dated May 4, 2004. Familiarity with that decision is assumed. The defendants RW Professional Leasing Services, Inc. ("PLS"), Rochelle Besser, Barry Drayer, Roger Drayer, Adam Drayer, and Susan Cottrell (collectively, the "PLS defendants") operated a medical equipment financing company, in which they arranged financing for the leasing of medical equipment by medical providers and supplied these providers with working capital loans. PLS apparently obtained loans from financial institutions for the purported purpose of purchasing medical equipment that would be leased to medical providers. In many instances, the leases and the medical equipment served as collateral for the loans. The second superceding indictment ("indictment") charges, among other things, that PLS devised a scheme to provide the financial institutions with sham documentation creating the false impression that the medical providers were leasing equipment from PLS.

The indictment further charges Katz, a former Branch Manager for the Bank of New York, with conspiring with the PLS defendants to defraud certain lending institutions by executing false escrow agreements for the PLS defendants, and with violating other criminal statutes relating to unauthorized bank loans. In addition, the indictment charges the defendant Stephen Barker with participating in the bank fraud conspiracy through his company, Carefree Financial Services ("Carefree"), which brokered financing for medical providers through PLS. The indictment charges that Barker created false purchase invoices in the name of a sham entity known as Medpro Equipment Company in order to make it appear as if PLS had purchased medical equipment from Medpro for the benefit of medical providers.

## II. DISCUSSION

### A. Motion by Katz for Severance and Separate Trial

The defendant Katz moves for severance and a separate trial pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Katz contends that being tried together with the co-defendants would likely result in a jury verdict against her, even absent specific proof that she herself was directly involved in the conspiracy. Katz claims that she had nothing to do with the PLS defendants and that she would be "tarred with the same brush and prejudiced by the association with them" if she is compelled to stand trial with those defendants.

Courts have repeatedly held that, generally, defendants who are indicted together should be tried together. *See United States v. Ventura,* 724 F.2d 305, 312 (2d Cir.1983) (citations omitted). Joint trials "promote efficiency and 'serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Zafiro v. United States,* 506 U.S. 534, 536, 113 S.Ct. 933, 122 L.Ed.2d 317 (1993) (quoting *Richardson v. Marsh,* 481 U.S. 200, 209, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987)). Indeed, the Second Circuit has supported joint trials, noting that:

> It would impair both the sufficiency and the fairness of the criminal justice system to require ... that prosecutors bring separate proceedings, presenting the same evidence again and again, requiring victims and witnesses to repeat the inconvenience (and sometimes trauma) of testifying, and randomly favoring the last-tried defendants who have the advantage of knowing the prosecution's case beforehand.

*United States v. Salameh,* 152 F.3d 88, 115 (2d Cir.1998) (quoting *Richardson,* 481 U.S. at 210, 107 S.Ct. 1702).

The decision to grant or deny a motion for severance is committed to the sound discretion of the district court. *Salameh,* 152 F.3d at 115. Pursuant to Rule 14, "a district court should grant a severance only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933. Defendants are not entitled to severance merely because they may have a better chance of acquittal in separate trials. *Id.* at 540, 113 S.Ct. 933; *see, e.g., United States v. Martinez,* 922 F.2d 914, 922 (1st Cir.1991). Furthermore, Rule 14 does not require severance even when sufficient proof of prejudice exists. *United States v. Haynes,* 16 F.3d 29, 32 (2d Cir.1994). Rather, "limiting instructions often will suffice to cure any risk of prejudice." *Zafiro,* 506 U.S. at 539, 113 S.Ct. 933.

Here, severance is not necessary or required. The Court finds that the evidence that will be introduced against Katz would not be so prejudicial as to warrant severance under Rule 14. "That one defendant's role in the conspiracy may have been smaller or less central than that of certain other co-conspirators does not mandate a separate trial." *United States v. Vega,* 458 F.2d 1234, 1236 (2d Cir.1972), *cert denied,* 410 U.S. 982, 93 S.Ct. 1506, 36 L.Ed.2d 177 (1973). In addition, in this case, the indictment alleges that Katz was directly involved in the alleged conspiracy to commit fraud. Even if the Court severed Katz's trial from that of her co-defendants, much of the same evidence would inevitably be introduced at both trials. *See id.* ("Evidence at the joint trial of alleged co-conspirators that, because of the alleged conspiratorial nature of the illegal activity, would have been admissible at a separate trial of the moving defendant is neither spillover nor prejudicial.").

Furthermore, to cure any possible prejudice, the Court will either redact evidence or provide the jury with limiting instructions to the extent that the evidence against one defendant may not relate to another. These limiting instructions will advise the jury that it must "give separate consideration to each individual defendant and to each separate charge against him." *Zafiro,* 506 U.S. at 541, 113 S.Ct. 933 (citations omitted). Accordingly, because Katz has not demonstrated that there is a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or lack of guilt, her motion to sever her trial from the remaining defendants is denied.

### B. Motion by Katz to Suppress Statements

Katz also moves pursuant to the Sixth Amendment to suppress her statements made on January 13 and February 13, 2003 during two pre-indictment interviews with the FBI, IRS, and other government agents while she was represented by inside and outside counsel for the Bank of New York. The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to ... have the Assistance of Counsel for his defense." U.S. Const. Amend. VI. In addition to this right, the Court has long recognized that "the right to counsel is the right to effective assistance of counsel." *McMann v. Richardson,* 397 U.S. 759, 771, n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In her motion, Katz contends that her prior attorneys were "irreconcilably conflicted," and acted as ineffective counsel by allowing her to make incriminating statements against herself.

Katz concedes that she voluntarily appeared at both scheduled interviews, and both parties acknowledge that Miranda is

not applicable because Katz was not in custody at either meeting. *See People v. Morris*, 59 A.D.2d 153, 155, 398 N.Y.S.2d 274 ("Miranda is not applicable to a non-custodial interrogation."). Nevertheless, Katz contends that she was deprived of her Sixth Amendment right · to effective counsel because her prior attorneys' employment by the Bank of New York presented a significant conflict of interest. The defendant maintains that she relied on her previous attorneys' advice when they encouraged her to speak freely to law enforcement agents without the protection of a standard proffer agreement, and that the only appropriate remedy currently available is suppression of those statements.

■ However, the Court notes that the Sixth Amendment right to effective assistance of counsel attaches only after "the initiation of adversary judicial proceedings, such as arraignment or filing of an indictment." *United States v. Edwards*, 342 F.3d 168, 182 (2d Cir.2003) (citing *United States v. Yousef*, 327 F.3d 56, 140 (2d Cir.2003)) (citations omitted). At the time of the interviews, no charges had been filed against the defendant and no adversary judicial proceedings had begun. Thus, the Sixth Amendment right to counsel had not yet attached. *See Kuhlmann v. Wilson*, 477 U.S. 436, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986) (stating that adversary judicial proceedings begin when a defendant is arraigned). The Court therefore holds that the defendant Katz was not denied her Sixth Amendment right to effective assistance of counsel. Accordingly, the Court denies the motion by Katz to suppress the statements made during the interviews at FBI headquarters on January 13 and February 13, 2003.

## C. Motion for Reconsideration and Discovery Requests by PLS

PLS moves for reconsideration of the portion of the Court's May 4, 2004 Memorandum of Decision and Order which denied the defendants' motion to order the Government to provide all statements and Grand Jury testimony of PLS employees. In the PLS's first motion, they requested that the Court order the Government to produce any statements of the defendants, including employees of PLS, in accordance with Rule 16 of the Federal Rules of Criminal Procedure, which entitles the defendants to discovery materials that the government intends to introduce at the trial or that is material to their defense. Fed. R.Crim.P. 16(a)(1). In response, the Government represented that it would produce the statements of all prospective witnesses three days prior to the trial. The defendants' request for an order to produce Rule 16 materials was denied, as the Court determined that it had no basis to conclude that the Government would do otherwise with regard to its Rule 16 obligations.

To preserve scarce judicial resources and to avoid piecemeal litigation, a motion for reconsideration is "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court." *Dellefave v. Access Temps., Inc.*, No. 99 Civ. 6098, 2001 WL 286771, at *1, 2001 U.S. Dist. LEXIS 3165, at *1 (S.D.N.Y. Mar. 22, 2001); *see also In re Houbigant, Inc.*, 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (A Rule 6.3 motion is "not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved"). In addition, "a party in its motion for reargument may not advance new facts, issues or arguments not previously presented to the court." *O'Brien v. Bd. of Educ. of Deer Park Union Free Sch. Dist.*, 127 F.Supp.2d 342, 345 (E.D.N.Y.2001).

Here, PLS argues that, under Rule 16(a)(1)(C), they "are entitled to pretrial production of any statement or Grand Jury

testimony of any of its directors, officers, employees, or agents, insofar as the person was either able to bind PLS with respect to the subject matter of the statement, or was personally involved in the alleged conduct constituting the offense and was able to bind PLS with respect to that conduct." PLS urges the Court to reconsider its prior decision because the Court did not refer to Rule 16(a)(1)(C), and instead referred only to materials that the Government intends to introduce at trial or that are material to the defense. In addition, the defendant contends that producing statements of prospective witnesses three days before trial is insufficient to satisfy the Government's obligations under Rule 16(a)(1)(C).

However, the Court notes that Rule 16(a)(1)(C) "only requires that the Government afford defendants an opportunity to inspect the documents it intends to introduce at trial." *United States v. Greyling*, No. 00 CR 631, 2002 WL 424655, at *3, 2002 U.S. Dist. LEXIS 4502, at *7 (S.D.N.Y. Mar. 18, 2002) (citing *United States v. Nachamie*, 91 F.Supp.2d 565 (S.D.N.Y.2000)). In the prior decision, the Court considered the applicability of Rule 16(a)(1)(C) and expressly referred to "Fed. R.Crim.P. 16(a)(1)," which encompasses the rule at issue. PLS therefore does not raise any issues of fact or law overlooked by this Court that would alter the Court's Order with regard to this issue.

Nevertheless, the Court does reconsider its prior decision with regard to its determination that the Government is permitted to comply with its obligations under Rule 16(a)(1)(C) three days before trial. Because of the voluminous documents for discovery and preparation for trial, the Court finds that fair play necessitates that the defendants be permitted more time to examine the Government's production of statements of all prospective witnesses. So that the defendants are af-

forded more time to adequately prepare for trial, the Court grants the motion for reconsideration by PLS only insofar as the Court orders the Government to produce such statements on or before September 14, 2004, or a period of one month before the trial in the event the trial is adjourned.

In addition, PLS seeks an Order from the Court directing the Government to, among other things, provide the defendants with additional discovery materials and itemizations of documents. At the July 30, 2004 conference, PLS informed the Court that this discovery request was no longer necessary. As such, the Court denies the request as moot.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the motion by Katz for severance of her case and for a separate trial is **DENIED**; and it is further

**ORDERED**, that the motion by Katz to suppress her statements is **DENIED**; and it is further

**ORDERED**, that motion for reconsideration by PLS of the May 4, 2004 Memorandum of Decision and Order is **GRANTED** only insofar as the Government is now required to produce the statements of prospective witnesses on or prior to September 14, 2004; and it is further

**ORDERED**, that the discovery request by PLS is **DENIED** as moot.

**SO ORDERED.**